# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2013 Term**

_____

No. 11-1284

_____

**FILED**

**March 21, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

In Re: FRIEDA Q.

_____

**Appeal from the Circuit Court of Kanawha County**
**Honorable Charles E. King, Jr., Judge**
**Civil Action No. 07-G-134**

**AFFIRMED IN PART; REVERSED IN PART;**
**AND REMANDED WITH DIRECTIONS**

_____

**Submitted: February 5, 2013**
**Filed: March 21, 2013**

Michael T. Clifford, Esq.                         Robert P. Martin, Esq.
Richelle K. Garlow, Esq.                        Kristen V. Hammond, Esq.
Law Office of Michael T. Clifford          Bailey & Wyant, P.L.L.C.
Charleston, West Virginia                    Charleston, West Virginia
Counsel for the Petitioner                  Counsel for the Respondent,
                                            Kanawha County Sheriff

Jennifer R. Victor , Esq.
Victor Victor & Helgoe LLP
Charleston, West Virginia
Guardian ad Litem

**JUSTICE WORKMAN delivered the Opinion of the Court.**

SYLLABUS BY THE COURT

1.    "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.    "In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review.  We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."  Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

3.    In guardianship and conservatorship proceedings, the time periods specified in Rule 16.10(d) of the West Virginia Trial Court Rules for the disposition by circuit courts of mental hygiene commissioners' recommended findings and orders are administrative, not jurisdictional.  A violation of the time frame provisions of Rule 16.10(d) of the West Virginia Trial Court Rules, by either the mental hygiene commissioner or the circuit court, does not divest the circuit court of jurisdiction to consider and rule upon post-appointment issues.

4.    "A nunc pro tunc order must be based on some memorandum on the records

relating back to the time it is to be effective and such order cannot be entered if the rights of the parties may be adversely affected thereby." Syl. Pt. 3, *State ex rel. Palumbo v. Cnty Court of Kanawha Cnty.*, 151 W. Va. 61, 150 S.E.2d 887 (1966).

5.     "A civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced. A monetary *per diem* penalty is permissible where it is set prospectively from the date of the contempt order as a means of ensuring compliance with the underlying discovery order." Syl. Pt. 6, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

6.     A monetary civil contempt sanction for compensation or damages must be based upon competent evidence of actual injury or harm to the aggrieved party resulting from the contemner's refusal to follow an order of the circuit court. The sanction must be remedial, not punitive.

7.     "A circuit court has no power to proceed summarily to punish for contempt of such court except in the instances enumerated in Code, 1931, 61-5-26." Syl. Pt. 2, *State ex rel. Arnold v. Conley*, 151 W. Va. 584, 153 S.E.2d 681 (1966).

ii

8. In any contempt case where the sanction imposed is either (1) a determinate term of incarceration, or (2) a monetary penalty payable to the State or to the court, the contemner is entitled to a jury trial. In any contempt case where the sanction imposed is either (1) an indefinite term of incarceration which specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, (2) the payment of a prospective fine which may be avoided by compliance with the court's order, or (3) the payment of compensation or damages to the party aggrieved, the contemner is not entitled to a jury trial. In any contempt case where the court proceeds without a jury, the contumacious conduct giving rise to the contempt charge must fall squarely within West Virginia Code § 61-5-26(a), (b), (c) or (d).

WORKMAN, J.:

In the proceedings below, the petitioner, Cordelia Q., was held in contempt for failure to obey a court order requiring her to account for the disposition of assets belonging to her mother, Frieda Q., a protected person.[1]  After careful consideration of the briefs, the appendix record, and the applicable law, we affirm the circuit court's finding that Cordelia Q. was in contempt.  Further, we affirm that portion of the $50.00 *per diem* contempt sanction that applied prospectively from the actual date of entry of the order of contempt; however, we reverse that portion of the sanction that was retroactive, and reverse the sanction insofar as it purported to be for "compensation or damages."

## I.    FACTS AND PROCEDURAL HISTORY

At the outset of these proceedings, Frieda Q. was a ninety-three-year-old widow, physically frail and mentally infirm.  She was living in her own home, which she and her late husband had built when they were a young married couple, with one of her three children, Cordelia Q.  On April 18, 2008, acting on a petition filed by Frieda's son pursuant to West Virginia Code § 44A-1-1 *et seq.* (2010), and following two hearings held before a mental

---

[1]In cases of a sensitive nature, this Court is careful to protect the identity of the parties. "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. W. Va. Dept. of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

hygiene commissioner,[2] the Circuit Court of Kanawha County found Frieda to be a protected person. The court further found that Cordelia was exploiting her elderly mother, neglecting her needs, allowing her home to fall into a filthy, unsanitary and dilapidated condition, and mishandling her finances. The court appointed the West Virginia Department of Health and Human Resources ("DHHR") as Frieda's guardian,[3] appointed the Kanawha County Sheriff's Department ("KCSD") as her conservator,[4] and ordered Cordelia to vacate Frieda's home.

Soon thereafter, Frieda was admitted to an assisted living facility, and the conservator initiated an inquiry into Frieda's finances and her ability to pay some or all of the costs of her care.

As part and parcel of this inquiry, on June 2, 2008, the court directed Cordelia to turn over to the conservator a full accounting of what she had done with $51,413.50 she received

---

[2]Pursuant to West Virginia Code §§ 44A-2-9(a) & 44A-2-15(c), the circuit court had appointed a mental health commissioner to conduct hearings in the case and make findings and recommendations.

[3]"'Guardian' means a person appointed by the court who is responsible for the personal affairs of a protected person[.]" W. Va. Code § 44A-1-4(5).

[4]"'Conservator' means a person appointed by the court who is responsible for managing the estate and financial affairs of a protected person[.]" W. Va. Code § 44A-1-4(1).

from selling 1,922 shares of Frieda's stock;[5] an accounting of all Frieda's property, which included real property in Charleston, West Virginia, and Blacksburg, Virginia, a car,[6] and several boxes of jewelry[7]; documents and bills related to Frieda's indebtedness; and Frieda's will. The accounting was to be done within sixty days and the physical property was to be turned over immediately.

More than five months passed, during which Cordelia did turn over a $10,000.00 cashier's check made payable to Frieda's nursing home, but failed to account for the remaining $41,413.50 or to do anything else she had been ordered to do. The conservator filed a motion for contempt. On October 28, 2008, at the conclusion of a hearing on the motion, the mental hygiene commissioner orally found Cordelia to be in contempt, rejecting her excuses that the documents were difficult to find, that she was trying to comply with

---

[5]The circuit court found that Cordelia obtained the proceeds of the stock sale by virtue of her fiduciary relationship with Frieda, and that a presumption of fraud arose with respect to the sale.

[6]After the guardianship and conservatorship proceedings had commenced, Cordelia attempted to convert ownership of Frieda's automobile to herself by having it re-titled in Virginia in her (Cordelia's) name. The conservator secured the car and was finally able to sell it after the circuit court entered an "Order Granting Conservator's Motion to Declare Cordelia [Q.'s] Certificate of Title Void."

[7]From the evidence in the appendix record, it is apparent that Cordelia never turned over any of Frieda's jewelry or otherwise accounted for it.

the order, and the like.[8]

For reasons that are not explained either in the appendix record or in the parties' briefs, the mental hygiene commissioner did not reduce her recommended order to writing and transmit it to the circuit court within seven days, as required by Rule 16.10(d) of the West Virginia Trial Court Rules.  In fact, it appears that the proposed order was not signed and transmitted by the commissioner until August 23, 2010.[9]

On August 25, 2010, at the conclusion of a hearing held for the purpose of reviewing the commissioner's proposed order, the circuit court entered an order *nunc pro tunc* to October 28, 2008, the date on which the mental hygiene commissioner had orally held Cordelia in contempt.  The court found that clear and convincing evidence supported the finding of contempt.  The sanctions imposed by the court, in relevant part, were:

> (2)    Cordelia [Q.] shall be sanctioned for contempt in order to compel her compliance with the Court's order.
>
> (3)    Cordelia [Q.] shall pay a fifty dollar ($50) fine per day as a sanction for every day she continues to be in contempt of Court.
>
> (4)    The fifty dollar ($50) per day fine is appropriate

---

[8] The appendix record is silent as to what excuses Cordelia gave for failing to turn over the car, jewelry, and other physical property.

[9] The commissioner's order was prepared on August 20, 2010, by Frieda's guardian ad litem, then signed by the commissioner three days later.

given the nature of the contempt, the burden placed upon the conservator, and the damage to the protected person's financial well-being caused by the contemptuous acts and/or omissions of Cordelia [Q.].

(5)  The fifty dollar ($50) per day fine shall be paid to Frieda [Q.], through her conservator, the KCSD, as a form of compensation or damages, inasmuch as Frieda [Q.] is the party aggrieved by the contemptuous conduct. *See Trecost v. Trecost*, 502 S.E.2d 445, 448 (W. Va. 1998); *State of West Virginia ex rel. Robinson v. Michael*, 276 S.E.2d 812, 818 (W. Va. 1981).

(6)  The fifty dollar ($50) per day sanction shall continue unabated until Cordelia [Q.] purges herself of contempt by complying fully with the Court's June 2, 2008, order.

Thereafter, Cordelia's counsel filed a motion to set aside the contempt order, arguing that Cordelia had made good faith attempts to comply with the underlying orders, and that the circuit court had no "jurisdiction or authority" to impose a retroactive fine. Both the conservator and the guardian filed motions to strike, arguing that the grounds contained in Cordelia's motion were legally insufficient, and motions to reduce the sanctions to a sum certain and for judgment. Cordelia's counsel then filed an "Amended/Corrected Motion to Set Aside Contempt Order," arguing that the imposition of the fine denied Cordelia her right to a jury trial and constituted a taking of her property without due process of law.

A hearing on these motions was set for December 7, 2010, but Cordelia did not

5

appear. The circuit court entered an order of judgment, but stayed its enforcement pending further proceedings. A subsequent hearing scheduled for May 9, 2011, was rescheduled by Cordelia for July 25, 2011 (without notice to opposing counsel).

On June 11, 2011, Frieda Q. died at the age of ninety-six. Sometime thereafter, Cordelia's counsel submitted to the circuit court a handwritten accounting of Frieda's funds, with no receipts, cancelled checks, or any other supporting documentation; and a copy of what purported to be Frieda's holographic will.[10]

On July 25, 2011, the court held its final hearing in this matter. Cordelia appeared, but declined to testify or to submit evidence. Thereafter, on August 15, 2012, the court entered an order finding that Cordelia was in contempt from October 28, 2008, to June 11, 2011, the date of Frieda's death. The court denied Cordelia's motion to set aside the contempt order, deeming the handwritten accounting "not satisfactory" and noting that Cordelia, "despite ample opportunity to do so, failed and refused to present any testimony or other evidence to suggest that she had complied with the Court's order." Further, the court granted the conservator's and guardian's motion to reduce the sanctions to a sum

_____

[10] It appears from the record that Cordelia is a beneficiary under this holographic will. We note that Cordelia's original counsel made reference to a Last Will and Testament that had been drafted by a Charleston, West Virginia, attorney; the record does not disclose what happened to this will.

6

certain and for judgment in the amount of $47,800.00, with interest accruing until paid. The court specifically found that the sanction "was appropriate given the nature of the contempt, the burden placed upon the conservator, and the damage to the protected person's financial well-being caused by the contemptuous acts and/or omissions of Cordelia [Q]." The court further affirmed its previous ruling that "[t]he fifty dollar per day sanction was properly ordered to be paid to Frieda [Q.], through her conservator, the KCSD, as a form of compensation or damages, inasmuch as Frieda [Q.] was the party aggrieved by the contemptuous conduct." It is this order that forms the basis of the instant appeal.

On appeal to this Court, petitioner Cordelia argues three assignments of error: that the circuit court was without jurisdiction to issue a contempt order, where the mental hygiene commissioner's recommended findings and conclusions were not timely submitted to the court pursuant to Rule 16.10(d) of the West Virginia Trial Court Rules; that the court's imposition of a civil contempt fine *nunc pro tunc* violated petitioner's rights under the due process clause of the West Virginia Constitution, W. Va. Const., article III, section 10; and that the court denied petitioner her right to a jury trial pursuant to West Virginia Code, § 61-5-26.

7

## II. STANDARD OF REVIEW

"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Further, we have held:

> "In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review."

Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996).

## III. DISCUSSION

Resolution of this case requires the Court to first consider two threshold issues: whether the circuit court had jurisdiction, and, if so, the effect of the court's entry of a *nunc pro tunc* order. We must then determine the validity of the circuit court's finding of contempt, and the validity of the sanction imposed. Finally, we address the petitioner's contention that she was entitled to a jury trial.

### A. CIRCUIT COURT JURISDICTION

In 1994, with passage of the West Virginia Guardianship and Conservatorship Act,

Chapter 44A of the West Virginia Code (2006),[11] the Legislature gave exclusive jurisdiction of all proceedings involving the appointment of guardians and/or conservators for mentally incompetent persons to the circuit courts. W. Va. Code § 44A-1-2(c). The courts are empowered to appoint a mental hygiene commissioner to conduct hearings on the original petition for appointment of a guardian or conservator, and on any subsequent petitions filed in connection with the proceedings. W. Va. Code §§ 44A-2-9(a), 44A-2-15(c). Thereafter, "[t]he designated mental hygiene commissioner shall submit written findings of fact and recommendations to the court upon conclusion of the hearing. The court may accept or reject the recommendations of the mental hygiene commissioner." W. Va. Code § 44A-2-9(a).

In West Virginia Code § 44A-1-5, the Legislature directed that "[t]he West Virginia 'Rules of Civil Procedure for Trial Courts of Record' shall apply to all proceedings instituted under the provisions of this chapter except as is otherwise specifically provided." On June 9, 1999, this Court promulgated and adopted the West Virginia Trial Court Rules, effective from July 1, 1999, superceding all former rules of practice for trial courts.

With this statutory framework in mind, we now examine the petitioner's threshold issue: whether a circuit court loses jurisdiction to enter a contempt order consistent with

---

[11]Amendments made to the Act subsequent to 1994 are not relevant to this case.

the findings and recommendations of a mental hygiene commissioner, where the commissioner's proposed findings and recommendations were not timely submitted to the court pursuant to applicable provisions of the West Virginia Trial Court Rules.

Rule 16.10(d) of the West Virginia Trial Court Rules provides that:

> *(d)     Post-appointment Hearings and Rulings.* – Hearings on post-appointment petitions or motions shall be held within sixty (60) days of the filing of such petitions or motions.  Findings of fact and recommendations by a mental hygiene commissioner shall be submitted to the assigned circuit judge within seven (7) days of the hearing.  The assigned circuit judge shall issue findings of fact, conclusions of law, and the order ruling on the petition or motion within seven (7) days of receiving the submission of the mental hygiene commissioner or, if the judge conducts a hearing, within seven (7) days of the hearing.

As noted earlier, the record is silent as to the reason for the delay of almost two years in the mental hygiene commissioner's submission of a proposed order to the circuit court.  Whatever the reason, it is clear that the proposed order was not timely submitted pursuant to Rule 16.10(d) of the West Virginia Trial Court Rules.  The petitioner contends the circuit court was thereby divested of jurisdiction, at least in the limited circumstance presented here, where the delay in final resolution of the matter resulted in the imposition of a civil contempt sanction years after it could achieve its purpose of forcing compliance with the court's underlying order.

10

Although we have not had occasion to determine whether the time limits contained in Rule 16.10(d) are jurisdictional, we have analyzed a similar argument made with respect to the time limits contained in Rule 16.11(b), governing magistrate court appeals. In syllabus point three of *Wolfe v. Welton*, 210 W. Va. 563, 558 S.E.2d 363 (2002), this Court held that "[t]he time frame periods specified in Rule 16.11(b) of the Trial Court Rules for the disposition by circuit courts of appeals from magistrate courts are administrative, not jurisdictional." In our discussion of the issue in *Wolfe*, we explained that "[Rule 16.11(b)] is a part of the standards established by this Court to promote the timely disposition of cases and does not operate to limit the jurisdiction of the circuit courts." *Wolfe*, 210 W. Va. at 571, 558 S.E.2d at 371.

We conclude that the same considerations discussed in *Wolfe* with respect to the time limits contained in Rule 16.11(b) of the West Virginia Trial Court Rules apply in the instant case with respect to the time limits contained in Rule 16.10(d). Although both rules are phrased in mandatory terms – the word *shall* is used throughout – both were intended to provide for speedy adjudication of cases, not to limit or expand the jurisdiction of the trial courts. Consistent with our view that the rule in question is administrative, not jurisdictional, we note that Rule 16.02 of the West Virginia Trial Court Rules provides in subsection (c) for purely administrative remedies in the event of circuit courts' noncompliance with time standards.

11

We have held that "[t]he Legislature is vested with the sole authority to define the appellate jurisdiction of circuit courts[.]" *Wolfe*, 210 W. Va. at 571, 558 S.E.2d at 371. In *Wolfe*, we concluded that the only statute expressly authorizing termination of magistrate court appeals[12] dealt with a party's failure to prosecute, and that this statute "set the *only* jurisdictional timeliness parameters of a *de novo* appeal to a circuit court of a civil case from a magistrate court." *Id*. (emphasis supplied). In the context of guardianship and conservatorship proceedings, the only statutes expressly authorizing termination of guardianship or conservatorship proceedings deal with the death, resignation or removal of the guardian or conservator, or the death of the protected person. W. Va. Code §§ 44A-4-1(a), (b) & (d).[13] As in *Wolfe*, we conclude that these statutory provisions set the only jurisdictional parameters of guardianship or conservatorship proceedings; they address mootness concerns, "not a delay in the circuit court's ruling . . . ." *Wolfe*, 210 W. Va. at 571, 558 S.E.2d at 371.

In light of the foregoing, we hold that in guardianship and conservatorship proceedings, the time periods specified in Rule 16.10(d) of the West Virginia Trial Court Rules for the disposition by circuit courts of mental hygiene commissioners' recommended

---

[12] *See* W. Va. Code § 50-5-12(d)(2)(2008).

[13] However, "[a] termination of an appointment does not affect the liability of a guardian or conservator for prior acts or the responsibility of a conservator to account for the estate of the protected person." West Virginia Code § 44A-4-1(f).

findings and orders are administrative, not jurisdictional. A violation of the time frame provisions of Rule16.10(d) of the West Virginia Trial Court Rules, by either the mental hygiene commissioner or the circuit court, does not divest the circuit court of jurisdiction to consider and rule upon post-appointment issues.

## B. *NUNC PRO TUNC* ORDER

Before analyzing the contempt citation and sanctions in this case, this Court must consider the effect, if any, of the circuit court's action in entering its order *nunc pro tunc* to October 28, 2008, the date on which the mental hygiene commissioner orally held Cordelia Q. in contempt.

In West Virginia, with respect to issues regarding entry of *nunc pro tunc* orders, all roads lead back to *State ex rel. Palumbo v. County Court of Kanawha County*, 151 W. Va. 61, 150 S.E.2d 887 (1966), where this Court held in syllabus point three that:

> [a] nunc pro tunc order must be based on some memorandum on the records relating back to the time it is to be effective and such order cannot be entered if the rights of the parties may be adversely affected thereby.

In reliance on *Palumbo*, we have consistently found that both prongs of the test mean exactly what they say: a *nunc pro tunc* order may not be entered unless there is a memorandum on the records to support its contents, and an order may not be entered where

the rights of the parties would be adversely affected. *See Barber v. Barber*, 195 W. Va. 38, 464 S.E.2d 358 (1995) *(nunc pro tunc order may not be entered to order distribution of an estate, where there was no memorandum on the records with respect to such distribution, and entry of nunc pro tunc order would adversely affect interests of lienholder on the property)*; *Robinson v. McKinney*, 189 W. Va. 459, 432 S.E.2d 543 (1992) *(nunc pro tunc order may not be entered to set child support, where there was no memorandum on the records which indicated that support was to be addressed in the original order, and entry of nunc pro tunc order would adversely affect interests of obligor parent)*.

The limitations on entry of *nunc pro tunc* orders were well summarized by the United States Court of Appeals for the Eighth Circuit in *U. S. v. Suarez-Perez*, 484 F.3d 537, 541 (8th Cir. 2007):

> The function of a nunc pro tunc order is to correct clerical or ministerial errors, including typographical errors, or to reduce an oral or written opinion to judgment; the function is not to make substantive changes affecting a party's rights. *See Transamerica Ins. Co. v. Smith,* 975 F.2d 321, 325-26 (7th Cir. 1992). The Latin phrase nunc pro tunc, which means now for then, "is merely descriptive of the inherent power of the court to make its records speak the truth – to record that which was actually done, but omitted to be recorded. It is no warrant for the entry of an order to record that which was omitted to be done." *W. F. Sebel Co. v. Hessee*, 214 F.2d 459, 462 (10th Cir. 1954); *see also Mellon v. St. Louis Union Trust Co.*, 240 F. 359 (8th Cir. 1917) (citing *Hickman v. Fort Scott*, 141 U.S. 415, 418, 12 S.Ct. 9, 35 L.Ed. 775 (1891)). In other words, using a nunc pro tunc order "[a] judge may correct a clerical error at any time . . . But he may not rewrite history." *United State v. Daniels*,

14

902 F.2d 1238, 1240 (7th Cir. 1990). The January 20, 2005 order is not cloaked in language correcting a clerical error; its effect is to rewrite history and substantially change Suarez-Perez's Speedy Trial Act rights.

As set forth in our recitation of the facts, in the instant case the circuit court entered its order *nunc pro tunc* to October 28, 2008, the date on which the mental hygiene commissioner orally found Cordelia to be in contempt. Pursuant to *Palumbo*, this was error. First, the mental hygiene commissioner did not reduce her findings and conclusions to writing until August 23, 2010. Thus, there was no "memorandum on the records relating back to the time [the circuit court's order was] to be effective[.]" *Palumbo*, 151 W. Va. at 61-62, 150 S.E.2d at 888, Syl. Pt. 3, in part. Second, the commissioner did not in any event have the authority to hold a litigant in contempt or to impose a sanction; she was authorized only to "submit written findings of fact and *recommendations* to the court upon conclusion of the hearing . . . ," which would then be accepted or rejected by the circuit court. W. Va. Code § 44A-2-9(a) (emphasis supplied). Thus, Cordelia was not in contempt, and the amount of the sanction was not established, until the circuit court accepted the commissioner's recommendations, which occurred on August 25, 2010. To the extent that the court's *nunc pro tunc* order attempted to reflect otherwise, "its effect [was] to rewrite history." *Suarez-Perez*, 484 F.3d at 541. Third, the circuit court's entry of a *nunc pro tunc* order adversely affected Cordelia interests, as the effect of the court's action was, *inter alia*, to impose six hundred sixty-six days of retroactive penalties, totaling

15

$33,300.00, on her.

Having determined that the circuit court's entry of a *nunc pro tunc* order was improper, we find both as a fact and as a matter of law that Cordelia Q. was held in contempt on August 25, 2010, the date on which the circuit court's contempt order was entered in the record of the case. With this threshold issue resolved, we now proceed to determine whether the finding of contempt and the sanction therefor were lawful.

## C.   THE FINDING OF CONTEMPT

It has been said that "[c]ontempt power is what distinguishes a court from an administrative tribunal. A court without contempt power is not a court." Lawrence N. Gray, *Criminal and Civil Contempt: Some Sense of a Hodgepodge*, 72 St. John's L. Rev. 337, 342 (Spring 1998). "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice." *In re Morrissey*, 305 F.3d 211, 217 (4th Cir. 2002) (citing *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873)).

We have upheld findings of civil contempt in a wide variety of situations, including where the contemner refused to turn property over to a receiver, *Petrie v. Buffington*, 79 W.

Va. 113, 90 S.E. 557 (1916); where the contemner refused to obey an injunction, *State v. Fredlock*, 52 W. Va. 232, 43 S.E. 153 (1903); where the contemner refused to testify before a grand jury, *In re Yoho*, 171 W. Va. 625, 301 S.E.2d 581 (1983); where the contemner refused to provide court-ordered discovery, *State Farm Mut. Auto. Ins. Company v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992); and where the contemner refused to pay court-ordered alimony, *Simmons v. Simmons*, 175 W. Va. 3, 330 S.E.2d 325 (1985) (trial court committed clear legal error in refusing to consider contempt sanctions).

In the case at bar, Cordelia was found to be in civil contempt for her failure and refusal to obey the order of the circuit court that she turn over documents and property to Frieda's conservator. Specifically, by order entered on June 2, 2008, Cordelia was ordered to provide a full accounting to the conservator concerning the $51,413.50 sale of Frieda's stock and to turn over any remaining proceeds therefrom; to turn over two jewelry boxes, and the jewelry contained therein, that Cordelia had removed from Frieda's house; to turn over all property, documents, and bills belonging to Frieda and/or evidencing any indebtedness; and to turn over Frieda's will. As of August 25, 2010, when the circuit court accepted the mental hygiene commissioner's recommendation and held Cordelia in contempt, Cordelia had done only one thing: she turned over a $10,000.00 cashier's check which was, apparently, all that was left from the stock sale. Additionally, Cordelia had actively sought to hide assets from the conservator by fraudulently re-titling Frieda's car

17

in Virginia. *See infra* note 6. The circuit court also found that during the two year period following the June 2, 2008, order, the conservator had made "numerous good faith attempts to obtain the cooperation of Cordelia . . . ," all to no avail; and found that Cordelia's acts and omissions "inured to the detriment of the protected person, Frieda [Q.]."

On July 25, 2011, at the final hearing held in this matter on the parties' respective post-judgment motions, Cordelia refused to testify or present evidence. Although some time after December 7, 2010, her counsel had submitted a handwritten "accounting," the circuit court deemed it "not satisfactory."[14] And although counsel also submitted a copy – not the original – of a holographic will, there is no explanation in the record as to the circumstances under which this will was prepared, or as to whether it pre- or post-dated the will prepared by a Charleston attorney, to which counsel had earlier made reference. *See infra* note 10.

Finally, we note that although Cordelia's counsel attempted to explain or justify his client's contumacious conduct in a "Motion to Set Aside Contempt Order," the explanations or justifications given, such as they were,[15] were not supported by any

---

[14]The appendix record does not contain a copy of this handwritten accounting; therefore, this Court has no basis on which it could conclude that the circuit court's evaluation of the document was clearly erroneous.

[15]Counsel claimed that Cordelia was "obstructed [from complying] in that the Court
(continued...)

evidence and are manifestly inadequate.

> A person who seeks to satisfy the court that his failure to obey
> an order or decree was due entirely to his inability to render
> obedience, without fault on his part, must prove such inability.
> In other words, the burden of proving inability to comply with
> the order allegedly violated is on the alleged contemnor.

*Watson v. Sunset Addition Prop. Owners Ass'n, Inc.*, 222 W. Va. 233, 235-36, 664 S.E.2d 118, 120-21 (2008) (citing *State ex rel. Zirkle v. Fox*, 203 W. Va. 668, 672, 510 S.E.2d 502, 506 (1998)). In this case, the appendix record contains not one scintilla of evidence to prove Cordelia's inability to obey the circuit court's directives in its order of June 2, 2008, that she turn over an accounting, documents, and physical property belonging to Frieda.

We review the circuit court's factual findings under a clearly erroneous standard. Syl. Pt. 1, *Carter v. Carter*, 196 W. Va. 239, 470 S.E.2d 193 (1996). Upon careful review of the court's original contempt order of August 25, 2010, its judgment order of August 15, 2011, and the materials contained in the appendix record, we find that the circuit court's findings of fact were amply supported by the evidence. The court's underlying order of June 2, 2008, was clear, its commands were express, and Cordelia's disobedience to those

---

[15](...continued)
refused to provide her access to the necessary paperwork of the estate of Frieda [Q.] . . . ," and that the finding of contempt was "merely a reflection of the political patronage paid by the county commission[.]"

commands was evident. We therefore affirm the circuit court's finding of contempt.

### D. THE CONTEMPT SANCTION

In determining whether the contempt sanction in this case was properly imposed, the threshold issue is whether it was civil or criminal in nature. This inquiry is necessary because "[i]t is widely recognized that due process requirements vary in their applicability to contempt cases depending upon the nature of the contempt involved." *State ex rel. Robinson v. Michael*, 166 W. Va. 660, 669 n.9, 276 S.E.2d 812, 817 n.9 (1981). In this regard, there are actually four classifications of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil. *Id*; *see also State ex rel. Koppers Co. v. Int'l Union of Oil, Chem. and Atomic Workers*, 171 W. Va. 290, 292-93, 298 S.E.2d 827, 829 (1982). Direct contempt occurs in the actual physical presence of the court, while indirect contempt occurs entirely or partially outside of the actual physical presence of the court. In this case, it is beyond dispute that the contempt, be it civil or criminal, was indirect.

In *Robinson*, Justice McHugh, writing for the Court, presented a scholarly history and analysis of our precedents, noting at the outset that

> [t]he law of contempt is frequently a source of confusion. The usual confusion associated with this area of the law arises in classifying the contempt as civil or criminal and in distinguishing the purpose to be served by imposing a sanction for the contempt. The history of contempt in West Virginia reflects that confusion.

20

166 W. Va. at 662, 276 S.E.2d at 814.

Following this analysis, Justice McHugh established functional tests for distinguishing between civil and criminal contempt.

> The contempt is civil where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order. The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order.

> The contempt is criminal where the purpose to be served by imposing a sanction for contempt is to punish the contemner for an affront to the dignity or authority of the court, or to preserve or restore order in the court or respect for the court. The appropriate sanction in a criminal contempt case is an order sentencing the contemner to a definite term of imprisonment or an order requiring the contemner to pay a fine in a determined amount.

*Id*. at 670, 276 S.E.2d at 818 (internal citations omitted).

Justice McHugh's analysis was entirely consistent with "principles [that] have been settled at least in their broad outlines for many decades." *Hicks v. Feiock*, 485 U.S. 624, 631 (1988). Of relevance to the instant case, the United States Supreme Court held in

21

*Hicks* that civil contempt sanctions must be remedial, not punitive, explaining that sanctions are "remedial when [they are] paid to the complainant, and punitive when [they are] paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks*, 485 U.S. at 632.

A review of this Court's precedents post-*Robinson* leads us to conclude that Justice McHugh's characterization of contempt as "a source of confusion" remains valid thirty years later. Some of our precedents distinguishing between remedial and punitive sanctions are difficult to reconcile, possibly as a result of the fact-driven inquiry that is at the heart of every contempt case. It is fair to say, at the least, that our precedents do not proceed in linear fashion from *Robinson*.

Of relevance to the instant case, we first examine *Gant v. Gant*, 174 W. Va. 740, 751, 329 S.E.2d 106, 117-18 (1985), where we held that in a divorce case where the contemner has failed to pay court-ordered support, the only civil contempt sanction that may be imposed is coercive imprisonment, not a *per diem* fine, despite the fact that either or both types of sanction would serve the remedial purpose of coercing compliance with the support order. In this respect *Gant* may be seen as completely consistent with *Robinson*, where Justice McHugh made no mention of a *per diem* fine but rather stated that

22

"[t]he appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner[.]" *Robinson*, 166 W. Va. at 670, 276 S.E.2d at 818.

Thereafter, in *Vincent v. Preiser*, 175 W. Va. 797, 338 S.E.2d 398 (1986), we reversed the circuit court's imposition of a *per diem* fine upon a litigant who had a "tortuous history" of failing to comply with discovery orders, *id*. at 799, 338 S.E.2d at 399, but not on the ground that a *per diem* fine is per se impermissible as a civil contempt sanction, as in *Gant*.[16] Rather, this Court first noted that although the circuit court's initial order, finding appellant Vincent to be in contempt, specified that the $100.00 per day fine was to be paid to appellee Preiser, the court's final order, reducing the *per diem* fines to a sum certain, specified that the fine was to be paid to the circuit clerk. *Id*. at 802, 338 S.E.2d at 403. The Court also reviewed the transcripts of court hearings and concluded that the circuit court's stated purpose to reimburse the appellee was a collateral purpose; the transcripts, the Court found, "indicate[d] that the predominant purpose of the monetary sanctions imposed by the trial court was to punish the appellant for his disrespect for the

---

[16] In *Vincent*, a $100.00 per day sanction was imposed for every day of non-compliance with discovery orders (seventy-four days in all), then reduced to a sum certain, $7,400.00, and ordered to be paid to the party aggrieved by the contemner's conduct.

23

court's authority." *Id.* Taking both of these considerations into account, the Court concluded that "there was 'an impermissible confusion or combination of purpose on the part of the sanctioning court' in treating the noncompliance with discovery orders as partially criminal contempt and partially civil contempt." *Id*. at 803, 338 S.E.2d at 404 (citing *Robinson*, 166 W. Va. at 671, 276 S.E.2d at 818); s*ee also Trecost v. Trecost*, 202 W. Va. 129, 133, 502 S.E.2d 445, 449 (1998 ) ("[t]hat an act is punished as neither wholly civil nor altogether criminal reflects an impermissible confusion or combination of purpose on the part of the sanctioning court.").

Thereafter, in syllabus point six of *State Farm Mut. Auto. Ins. Company v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992), this Court held that in a civil action where the contemner had failed to provide court-ordered discovery:

> A civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced. A monetary *per diem* penalty is permissible where it is set prospectively from the date of the contempt order as a means of ensuring compliance with the underlying discovery order.

We distinguished *Vincent*, noting that its language to the effect that "a prospective, *per diem* fine was inappropriate," was dicta; and further noting that the critical factor in *Vincent* was "that the trial court attempted to impose a monetary fine upon the plaintiff for conduct which occurred before the plaintiff was found in contempt[.]" *State Farm*, 188 W.

Va. at 632, 425 S.E.2d at 587. Citing numerous cases from other jurisdictions that have

upheld imposition of a *per diem* fine as a sanction for civil contempt, we found the

following passage from *United States v. Westinghouse*, 648 F.2d 642, 651 (9ᵗʰ Cir. 1981),

to be consistent with our view of the nature of a civil contempt:

> [T]he purpose [of the fines] was to compel the companies to comply with the court's schedule for discovery . . . [T]he companies could have purged themselves of contempt and of any fine through timely compliance. The sanctions were therefore remedial rather than punitive, prospective and for the benefit of the other party to the litigation rather than unconditional, retrospective, or in vindication of the state's authority . . . . In short, the fines were compulsory in nature, . . . and as such the contempt was civil. That the companies were forced to pay the piper even though they belatedly complied with the orders does not alter the civil nature of the contempt.

*State Farm*, 188 W. Va. at 631-32, 425 S.E.2d at 586-87.

Finally, in *Trecost*, after determining that an award of attorney fees as part of the

sanction in a criminal contempt case was error,[17] we concluded by "urg[ing] circuit courts

to adhere to the precepts of *Robinson* in fashioning sanctions for civil and criminal cases."

*Trecost*, 202 W. Va. at 133, 502 S.E.2d at 449. While we affirmed in *Trecost* that "a fine

in the nature of compensation or damages to the party aggrieved . . . is a proper sanction

---

[17] "'[R]equiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemnor to comply with the order' is a proper sanction in a civil contempt case, but not in a criminal contempt case." *Trecost*, 202 W. Va. at 133, 502 S.E.2d at 449 (quoting *Robinson*, Syllabus Points 3 & 5).

25

in a civil contempt case . . . ," *id.*, we did not mention that a prospective *per diem* fine is also a proper sanction, Syl. Pt. 6, in part, *State Farm*, 188 W. Va. at 624, 425 S.E.2d at 579, since this was not necessary to the resolution of the case.

With *Robinson* and its progeny in mind, we turn to the dispositive question presented in this case: whether the penalty imposed on Cordelia Q. was civil, criminal, or a "confusion or combination" of both. In this regard, we note that the penalty was classified in one paragraph of the circuit court's order as a coercive *per diem* penalty, and in another paragraph as compensation or damages to the party aggrieved by the contempt. We examine the validity of the penalty under both scenarios.

### 1. *Per Diem* Penalty

It is well established that where a coercive civil contempt sanction is imposed, the contemner must have the opportunity to purge himself or herself of contempt by complying with the relevant court order. *Robinson*, 166 W. Va. at 670, 276 S.E.2d at 818; *Westinghouse*, 648 F.2d at 651; *see also Slauenwhite v. Slauenwhite*, 679 A.2d 93, 94 (Me. 1996); *Ohio Dept. Of Taxation v. Kunkle*, 903 N.E.2d 692, 696 (Ohio Ct. App. 2008). It is often said, somewhat literally in the case of imprisonment and metaphorically in the case of a monetary sanction, that the contemner "has the keys to the cell in his or her own hands." *In re Marriage of Tatham*, 688 N.E.2d 864, 871 (Ill. Ct. App. 1997); *see also*

*Varley v. Varley*, 934 S.W.2d 659, 664 (Tenn. Ct. App. 1996) (to same effect).

Petitioner claims that her contempt cannot be classified as civil in nature because the *nunc pro tunc* imposition of a $50.00 per diem sanction did not allow her to purge herself of the contempt, since the time for purging had already elapsed at the time the sanction was imposed. *See State Farm*, 188 W. Va. at 632, 425 S.E.2d at 587 ("a civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced."). We agree, although only with respect to that portion of the fine that imposed daily penalties from October 28, 2008, the date on which the mental hygiene commissioner orally recommended that the petitioner be held in contempt, to August 25, 2010, the date on which the circuit court entered its order of contempt and set the $50.00 per day penalty.

The whole purpose of a prospective fine is to coerce obedience to a lawful order of the circuit court, by giving the contemner the "power to avoid any penalty" by complying with the order. *Penfield Co. v. S.E.C.*, 330 U.S. 585, 590 (1947). In this case, the circuit court retroactively imposed a prospective fine, meaning that it was not prospective at all for the period beginning October 28, 2008, and ending on August 25, 2010. The retroactive fine was not a "coercive sanction[] to compel the contemnor to do what the law made it [her] duty to do . . . ," and was therefore not remedial; it was punitive. *Id*.; s*ee also*

*State Farm*, 188 W. Va. at 632, 425 S.E.2d at 587 ("impos[ition of] a monetary fine for conduct which occurred before the plaintiff was found in contempt of the court's discovery order, [is] a sanction which smacks of a criminal penalty, rather than a coercive civil penalty which can be purged upon compliance with the discovery order.").[18]

It is not clear from the petitioner's brief whether she is contesting the fine insofar as it actually did operate prospectively, *i.e.*, from August 25, 2010, to June 11, 2011, the date on which Frieda died. However, there can be no serious question that from August 25, 2010, forward, the fine was civil in nature and entirely proper as a sanction pursuant to this Court's decision in *State Farm*: it operated to coerce Cordelia's compliance with the circuit court's orders, and Cordelia could have avoided it completely by promptly turning over the accounting of Frieda's assets, Frieda's physical property, and Frieda's will. "A monetary *per diem* penalty is permissible where it is set prospectively from the date of the contempt order as a means of ensuring compliance with the underlying discovery order." Syl. Pt. 6, in part, *State Farm*, 188 W. Va. at 632, 425 S.E.2d at 587.

In light of the foregoing, we reaffirm the continuing vitality of the law enunciated

---

[18] It is of no moment that the mental hygiene commissioner had orally found Cordelia to be in contempt two years before the circuit court entered its contempt order. The commissioner did not have contempt power; rather, she had the power to make findings and recommendations, which could then be accepted or rejected by the court.

in *State Farm*, which held that a *per diem* penalty is a permissible civil contempt sanction in a case where a litigant has refused to obey an order of the court, where the fine is set prospectively from the date of the order of contempt, and where the contemner has the ability to purge himself or herself by complying with the order. However, "[a] civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced." Syl. Pt. 6, in part, *State Farm*, 188 W. Va. at 632, 425 S.E.2d at 587. Applying these principles to the case at bar, that portion of the *per diem* penalty covering the period of time from October 28, 2008, to August 25, 2010, the date of entry of the circuit court's order of contempt, was impermissible as it "smacks of a criminal penalty, rather than a coercive civil penalty which can be purged upon compliance[.]" *State Farm*, 188 W. Va. at 632, 425 S.E.2d at 587. That portion of the *per diem* penalty which was prospective from August 25, 2010, to June 11, 2011, the date of Frieda's death, was a permissible civil contempt penalty, as the contemner could have purged herself at any time after August 25, 2010, and thus avoided the penalty.

2. Compensation or Damages

Respondents contend that notwithstanding the analysis above, the contempt was civil in nature because the circuit court specified that "[t]he fifty dollar per day sanction was properly ordered to be paid to Frieda [Q.], through her conservator, the KCSD, as a

29

form of compensation or damages, inasmuch as Frieda [Q.] was the party aggrieved by the contemptuous conduct."

It was established in *Robertson* and affirmed in all of our cases thereafter with the exception of *Gant*, discussed *infra*, that a sanction for civil contempt may take the form of "an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the [underlying] order." *Robertson*, 166 W. Va. at 670, 276 S.E.2d at 818. In this case, however, notwithstanding the circuit court's dutiful recitation of the words "compensation or damages," the sanction was not related in any way to actual injury or harm caused to the respondents.[19] Rather, the amount was calculated by multiplying the per diem fine, $50.00, by the number of days that had elapsed since the date on which the mental hygiene commissioner orally found Cordelia to be in contempt. In short, the "compensation or damages" award was simply the *per diem* fine, thinly disguised.

Thus, as was the situation in *Vincent*, our review of the appendix record demonstrates that "the predominant purpose of the monetary sanctions imposed by the trial court was to punish the appellant for [her] disrespect for the court's authority . . . ," and the

---

[19] If there was any evidence presented to the circuit court as to injury or harm, it is not included in the appendix record and, therefore, cannot be considered by this Court on appeal.

30

contempt was therefore criminal at least in part. *Vincent*, 175 W. Va. at 802, 338 S.E.2d at 403.

The petitioner contends, in cursory fashion, that imposition of the sanction under these facts and circumstances violated her right to due process of law. We note at the outset that both West Virginia's contempt statute and this Court's precedents have been limited to a consideration of certain procedural due process rights which are not at issue in this case. "No court shall impose a fine for contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause, on some certain day, and shall have failed to appear and show cause." W. Va. Code § 61-5-26 (2010). Although a jury trial is not required in a civil contempt case, "certain procedural safeguards must be present. The accused must have notice, the right to counsel, and the right to present evidence and argue his case." *Lawyer Disciplinary Counsel v. Cunningham*, 200 W. Va. 339, 341 & n.4, 489 S.E.2d 496, 498 & n.4 (1997) (citing *United Mine Workers of Am. v. Faerber*, 179 W. Va. 73, 76 n.3, 365 S.E.2d 353, 356 n.3 (1986)). Cordelia Q. enjoyed all of these procedural protections during the course of the contempt proceedings below.

Nonetheless, we find that the monetary sanction imposed upon Cordelia violated her due process rights under the West Virginia Constitution, article III, section 10, because the sanction was neither a prospective *per diem* fine nor "compensation or damages" for the party aggrieved. Rather, it was arbitrarily imposed and was punitive in nature.

In all of our precedents, the monetary sanctions imposed for contempt have ranged from nominal ($10.00) to modest, albeit attention-getting ($500.00). In contrast, the monetary sanction imposed on Cordelia was $47,800.00, with post-judgment interest until paid. Under the facts of this case, this extraordinary sanction cannot be upheld. Although designated as "compensation or damages" for Frieda, it bore no relationship whatsoever to any injury or harm sustained by Frieda (or her conservator acting on her behalf); no evidence was presented from which an award of "compensation and damages" could have been rationally determined. Rather, as noted earlier, the circuit court simply multiplied the *per diem* fine, $50.00, by the number of days that had elapsed from October 28, 2008, the date on which the mental hygiene commissioner recommended that Cordelia be held in contempt, to July 11, 1011, the date on which Frieda died. The court then labeled the result "compensation or damages" in an apparent attempt to bring the fine within the language of *Robinson* and its progeny.

While we are sympathetic to the circuit court's understandable frustration with Cordelia, who shamefully neglected her aged mother, systematically converted her assets, and then stonewalled any attempts to require an accounting, the words of *Robinson* at issue here, "compensation or damages," have meaning. *Robinson*, 166 W. Va. at 670, 276 S.E.2d at 818. In this regard, we hold that a monetary civil contempt sanction for

32

compensation or damages must be based upon competent evidence of actual injury or harm to the aggrieved party resulting from the contemner's refusal to follow an order of the circuit court. The sanction must be remedial, not punitive. *See N.L.R.B. v. Monfort, Inc.*, 29 F.3d 525, 528 (10th Cir. 1994) ("The sanction of civil contempt serves two remedial purposes: (1) to enforce compliance with an order of the court, and (2) to compensate for losses *caused by* the noncompliance. The sanctions imposed are to be remedial or coercive, but not penal[.]") (emphasis supplied and internal citations omitted); *Broadview Chem. Corp. v. Loctite Corp.*, 311 F. Supp. 447, 449 (D. Conn. 1970) ("While the court has wide latitude in the assessment of damages, damages cannot be arrived at by conjecture.") (internal citations omitted); *Nelson v. Progressive Realty Corp.*, 104 A.2d 241, 243 (R.I. 1954) (contempt sanctions must be based upon competent evidence, as sanctions are "remedial and designed to reimburse complainants for the wrong done as a result of the noncompliance with a valid order of the court[.]").

In this case, where the appendix record contains no evidence showing the actual harm, if any, resulting from Cordelia's contumacious conduct – and where the indisputable fact is that the amount of the sanction was based on a *per diem* fine, not on any injury or harm to the respondents – the sanction imposed by the circuit court cannot stand.

## E.   RIGHT TO A JURY TRIAL

The final issue in this case is whether the petitioner was entitled to a jury trial

pursuant to West Virginia Code § 61-5-26 (2010), since the sanction imposed upon her was

at least partly criminal in nature.  That statute provides:

> The courts and the judges thereof may issue attachment for
> contempt and punish them summarily only in the following
> cases: (a) Misbehavior in the presence of the court, or so near
> thereto as to obstruct or interrupt the administration of justice;
> (b) violence of threats of violence to a judge or officer of the
> court, or to a juror, witness, or party going to, attending or
> returning from the court, for or in respect of any act or
> proceeding had, or to be had, in such court; (c) misbehavior of
> an officer of the court, in his official character; (d) disobedience
> to or resistance of any officer of the court, juror, witness, or
> other person, to any lawful process, judgment, decree or order
> of the said court.  No court shall, without a jury, for any such
> contempt as is mentioned in subdivision (a) of this section,
> impose a fine exceeding fifty dollars, or imprison more than ten
> days. But in any such case the court may impanel a jury
> (without an indictment or any formal pleading) to ascertain the
> fine or imprisonment proper to be inflicted, and may give
> judgment according to the verdict.  No court shall impose a fine
> for contempt, unless the defendant be present in court, or shall
> have been served with a rule of the court to show cause, on
> some certain day, and shall have failed to appear and show
> cause.

The respondents deny that there is any right to a jury trial for contempt.  They rely

on *State ex rel. Continental Coal Co. v. Bittner*, 102 W. Va. 677, 136 S.E 202 (1926), for

the sweeping proposition that:

> [i]n a proceeding for a contempt of court for disobedience to
> its lawful order or decree there is no constitutional right of

34

> trial by jury involved.  It may be tried by the court summarily
> . . . Trial without jury in such cases is "due process of law"
> within the 14[th] amendment to the Constitution of the United
> States.

*Continental Coal*, 102 W. Va. at 689, 136 S.E. at 207 (citation omitted.)

The petitioner's reading of the statute is far too expansive, and the respondents' reliance on *Continental Coal*, an eighty-seven-year-old case, is misplaced.  With respect to the statute, a close reading demonstrates that the Legislature has expressly mandated a jury trial in only one situation: where the contempt falls within subsection (a), misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice, and the sanction is a fine exceeding fifty dollars or imprisonment for more than ten days.  W. Va. Code § 61-5-26.  "The statute is silent as to the right to a jury in the other categories of contempt."  *Hendershot v. Hendershot*, 164 W. Va. 190, 201, 263 S.E.2d 90, 96 (1980).  With respect to *Continental Coal*, a close reading of our later cases demonstrates that it has been overruled *sub silentio*, at least with respect to its holding that there was no right to a jury trial in a case where the contemner received a determinate six month prison term.

First, in *State ex rel. Arnold v. Conley*, 151 W. Va. 584, 153 S.E.2d 681 (1966), this Court reversed a summary punishment of five days in jail and a fine of $10.00 imposed upon the contemner, a newspaper reporter, on the ground that his contumacious conduct

35

did not fall within subsection (a) of West Virginia Code § 61-5-26. Because only offenses

falling under that subsection are expressly made punishable by summary action, subject to

the limitations on the penalty imposed, we concluded that:

> [I]n view of the history of these provisions, meticulous regard
> for those separate categories of offenses must be had, so that the
> instances where there is no right to jury trial will be narrowly
> restricted.

*Arnold*, 151 W. Va. at 591, 153 S.E.2d at 685 (citing *Nye v. United States*, 313 U.S. 33, 49

(1941)).[20] Syllabus point two of *Arnold* instructed that "[a] circuit court has no power to

proceed summarily to punish for contempt of such court except in the instances enumerated

in Code, 1931, 61-5-26."

Thereafter, in *Hendershot*, we shifted our focus to the penalty imposed, holding

that the statute was unconstitutional insofar as it permitted "imprisonment without a jury

trial in a criminal contempt proceeding where the contemnor is sentenced and the

---

[20]In a footnote in *State ex rel. Koppers v. International Union of Oil, Chemical and Atomic Workers*, 171 W. Va. 290, 293 n.2, 298 S.E.2d 827, 829 n.2 (1982), this Court overruled *Arnold* insofar as *Arnold* had held that "a criminal contempt proceeding is not an actual criminal trial." The sole issue in *Koppers* was whether a jury trial in a criminal contempt case could be prosecuted by private counsel rather than the county prosecutor; we held that it could not. Thus, we do not read the footnote in *Koppers* to overrule *Arnold* with respect to any of the matters at issue in the instant case. In this regard, we have held that "language in a footnote generally should be considered obiter dicta which, by definition, is language 'unnecessary to the decision in the case and therefore not precedential.' *Black's Law Dictionary* 1100 (7th ed. 1999)." *State ex rel. Med. Assurance v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003).

sentencing order does not provide him an opportunity to purge the contempt." 164 W. Va. at 202, 263 S.E.2d at 97. In so doing, we quoted the following language from the United States Supreme Court's decision in *Bloom v. Illinois*, 391 U.S. 194 (1968): "the potential for abuse in exercising the summary power to imprison for contempt – [] is an 'arbitrary power which is 'liable to abuse.'" *Bloom*, 391 U.S. at 202 (quoting *Ex Parte Terry*, 128 U.S. 289, 313 (1883)).

We recognized that although our ruling might be construed by some as "depriving trial courts of an effective means of keeping order in the courtroom or ensuring that their orders are obeyed . . . ," the circuit courts' power to punish for contempt was not diminished "but only . . . made subject to the procedural safeguard of a jury as constitutionally commanded for any crime where incarceration is contemplated." *Hendershot*, 164 W. Va. at 203, 204, 263 S.E.2d at 97.

We believe that our rationale and holding in *Hendershot* were sound, but observe that the syllabus points in that opinion may be a source of confusion insofar as they can be read to say that a contempt may only be classified as criminal if a jail sentence is imposed.[21]

---

[21]*Hendershot* contains two syllabus points. Syllabus point one provides that, "A contempt will be deemed criminal when a jail sentence is imposed and the contemnor is given no opportunity in the sentencing order for immediate release by purging himself of contempt by doing an act which is within his power to accomplish." Syllabus point two

(continued...)

This somewhat limited view was superceded in *Vincent*, where we found that a  contempt sanction could be both civil and criminal in nature notwithstanding the  fact that it was purely monetary.  Therefore, in order to harmonize *Hendershot* and *Vincent*, and to provide guidance for the courts, the bar, and litigants, we hold today that in any contempt case where the sanction imposed is either (1) a determinate term of incarceration, or (2) a monetary penalty payable to the State or to the court, the contemner is entitled to a jury trial.  In any contempt case where the sanction imposed is either (1) an indefinite term of incarceration which  specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, (2) the payment of a prospective fine which may be avoided by compliance with the court's order, or (3) the payment of compensation or damages to the party aggrieved, the contemner is not entitled to a jury trial.  In any contempt case where the court proceeds without a jury, the contumacious conduct giving rise to the contempt charge must fall squarely within West Virginia Code § 61-5-26(a), (b), (c) or (d).

Applying this holding to the instant case,  we find that Cordelia Q. was not entitled to a jury trial because her contumacious conduct fell squarely within subsection (d) of West Virginia Code § 61-5-26, which permits the court to proceed summarily.  Moreover, the

---

[21](...continued)
provides that, "Article III, Section 14 of the West Virginia Constitution prohibits imprisonment without a jury trial in a criminal contempt proceeding."

38

sanction imposed was monetary and was intended to be paid to the party aggrieved, Frieda Q., or after Frieda's death, to her conservator.

## IV.    CONCLUSION

Based upon the foregoing, the order of the Circuit Court of Kanawha County is affirmed, in part, and reversed, in part. The order is affirmed insofar as it found petitioner Cordelia Q. to be in civil contempt, and imposed a $50.00 *per diem* contempt sanction upon her for the period of time from August 25, 2010, the date on which the court's contempt order was entered, through June 11, 2011, the date on which Frieda Q. died. The order is reversed insofar as it imposed the *per diem* contempt sanction for the period of time from October 28, 2008, the date on which the mental hygiene commissioner recommended that Cordelia be held in contempt, through August 25, 2010, the date on which the circuit court accepted the recommendation. Further, said order is reversed insofar as the contempt sanction purported to be for "compensation or damages" to the aggrieved party.

This action is remanded to the Circuit Court of Kanawha County for entry of a judgment order reducing the $50.00 *per diem* sanction from August 25, 2010, to June 11, 2011, to a sum certain.

> Affirmed in Part; Reversed in Part;
> And Remanded With Directions.