**UNITED STATES of America,**

v.

**Frederick A. EYERMAN, Defendant.**

**87 Cr. Misc. 1–pg.–8 (MP).**

United States District Court,
S.D. New York.

April 13, 1987.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Jess Fardella, Asst. U.S. Atty., for U.S.

Walder, Sondak, Berkeley & Brogan, P.A., Roseland, N.J. by Justin P. Walder, for defendant.

## OPINION

MILTON POLLACK, Senior District Judge.

The defendant Eyerman moved to dismiss a criminal contempt proceeding pending against him by reason of his acts on a particular visit to the Danvers branch office of First Jersey Securities (FJS). Alternatively, he moved to stay the trial of this contempt action, pending the outcome of an ongoing general grand jury investigation which is examining acts of FJS, its officers and employees other than Eyerman, and possible other acts of Eyerman relating to his visits to other FJS offices.

Eyerman claimed that he is a target of the grand jury investigation, based on the same facts which underlie the instant criminal contempt charge. He asserted that his target status unconstitutionally infringes on his rights to defend himself in this case. Further, Eyerman contended that the Grand Jury is being improperly used for discovery, directed to the instant criminal contempt action.

For the reasons appearing hereafter, the motions were denied.

On November 20, 1984, the Court entered a Final Judgment of Permanent Injunction by consent of FJS. As part of that judgment, the Court appointed a Consultant, Benjamin Lubin, to review the practices and procedures of FJS to ensure that they were in compliance with applicable securities laws, regulations and industry self-regulatory guidelines. It was contemplated that, where necessary, the practices and procedures of FJS were to be brought into compliance.

The Judgment requires that the Consultant be afforded the full cooperation of FJS and all of its employees and agents in providing access to relevant documents, records and personnel of FJS. Lubin made an initial survey and investigation which was followed by an agreed-upon second check-up. He filed two extensive reports which included numerous analyses and recommendations, intended to bring FJS into compliance with federal regulations.

Unknown to Lubin, Eyerman allegedly had taken action to conceal and distort the true situation prevailing at the Danvers branch office of FJS.

Eyerman, since at least 1984, has been a Vice-President and Director of Compliance at FJS. As Compliance Director, Eyerman was in charge of instituting and monitoring FJS bookkeeping and financial practices, focusing on their compliance with securities laws.

On January 27, 1987, the government filed a complaint accusing Eyerman of obstruction of justice, 18 U.S.C. § 1503, by attempting to impede Lubin's investigation. Specifically, the government charged that, preceding a scheduled inspection visit by Lubin in 1986 to the Danvers branch office of FJS, Eyerman had instructed the branch manager to conceal from Lubin material documents, to destroy relevant records and to lie to Lubin about the existence of such papers and about the procedures employed by FJS at that office.

The government applied to a Magistrate for an arrest warrant and Eyerman was arrested on February 3, 1987. The 30 day period within which the government would have to file an indictment on this arrest would have expired on March 5, 1987. Prior thereto, on March 3, the complaint was dismissed without prejudice.

The government then obtained from this Court an Order to Show Cause, initiating a criminal contempt action against Eyerman for alleged violation of the dictates of the injunction and judgment of November 20, 1984. Following due service of the Order and appearance of the defendant by counsel, a jury trial of the contempt action was set for May 26, 1987.

■ Eyerman moved to dismiss the action, contending that the government was

obligated to proceed against him by indictment. The law is to the contrary; he is not entitled to be prosecuted by indictment on a criminal contempt charge. *Green v. United States*, 356 U.S. 165, 187, 78 S.Ct. 632, 644, 2 L.Ed.2d 672 (1958). The holding in that case has not been questioned or overruled on this point by any subsequent authority. *See, e.g., United States v. Nunn*, 622 F.2d 802, 803–04 (5th Cir.1980); *United States v. Bukowski*, 435 F.2d 1094, 1101 (7th Cir.1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *Mitchell v. Fiore*, 470 F.2d 1149, 1153 (3d Cir. 1972).

Eyerman also argued that his Sixth Amendment right to a fair trial is adversely affected by the pendency of an ongoing grand jury investigation of FJS and its officers and agents in that, were he to testify in the contempt case, his testimony may subject him to as yet unstated and uncharged grand jury accusations. He claims therefore that the criminal contempt action should be stayed until the grand jury either indicts him or declines to do so. No authority is cited in support of this contention.

The grand jury is not obliged to defer or suspend its broad ranging investigation into the affairs of FJS nor is the government obliged to await the grand jury's pleasure with respect to Eyerman before proceeding with this contempt action. Nor is the government bound to assure Eyerman that the grand jury will not indict Eyerman for obstruction of justice or any other crime. It will be time enough to consider the effect of an indictment if and when the grand jury accuses Eyerman of some crime.

Finally, Eyerman suggested that the government is misusing the grand jury process as a discovery device to develop its case against him for criminal contempt. Eyerman cannot make the requisite showing that the grand jury inquiries are "for the sole and dominating purpose of preparing an already pending [charge] for trial." *In re Grand Jury Subpoena Duces Tecum*

*Dated Jan. 2, 1985*, 767 F.2d 26, 29 (2d Cir.1985).

The motions were accordingly denied.