IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

**FILED**

**June 6, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 23-83

_____

STATE OF WEST VIRGINIA EX REL. DANIEL DILLY, SUPERINTENDENT OF
THE RUBSENTEIN JUVENILE CENTER,
Petitioner,

v.

THE HONORABLE KURT HALL, JUDGE OF THE CIRCUIT COURT OF LEWIS
COUNTY, THE STATE OF WEST VIRGINIA, AND D.P,
Respondents.

_____

AND

_____

No. 23-289

_____

STATE OF WEST VIRGINIA EX REL. NANCY OLDAKER,
Petitioner,

v.

THE HONORABLE KURT HALL, JUDGE OF THE CIRCUIT COURT OF LEWIS
COUNTY, THE STATE OF WEST VIRGINIA, AND D.P,
Respondents.

_____

Petitions for Writs of Prohibition

WRITS GRANTED
_____


Submitted: May 1, 2024
Filed:  June 6, 2024

Patrick Morrisey, Esq.                               The Honorable Kurt Hall
Attorney General                                     Circuit Court Judge
Michael R. Williams, Esq.                            Weston, West Virginia
Principal Deputy Solicitor General                   Self-Represented Respondent
Jonathan M. Calhoun, Esq.
Assistant Attorney General                           Patrick Morrisey, Esq.
Charleston, West Virginia                            Attorney General
Counsel for Petitioner Dilly                         Chanin W. Krivonyak, Esq.
                                                     Deputy Attorney General
                                                     Charleston, West Virginia
                                                     Christina C. Flanigan, Esq.
                                                     Prosecuting Attorney for
                                                     Lewis County
Jordan K. Herrick, Esq.                              Weston, West Virginia
Samuel M. Bloom, Esq.                                Counsel for Respondent State
Bailey & Wyant, PLLC
Charleston, West Virginia                            G. Phillip Davis, Esq.
Counsel for Petitioner Oldaker                       Arthurdale, West Virginia
                                                     Counsel for Respondent D.P.

JUSTICE HUTCHISON delivered the Opinion of the Court.

1   "'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1.' Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 1, *West Virginia Department of Military Affairs and Public Safety, Division of Juvenile Services v. Berger*, 203 W. Va. 468, 508 S.E.2d 628 (1998).

2.   "When a court is attempting to proceed in a cause without jurisdiction, prohibition lies, and the petitioner may apply to this court in the first instance, as matter of right, for the writ." Syllabus Point 2, *Marsh v. O'Brien*, 82 W. Va. 508, 96 S.E. 795 (1918).

3.   Due process requirements vary in their applicability to contempt cases depending upon the nature of the contempt involved.

4.   There are four classifications of contempt: direct criminal, indirect criminal, direct civil, and indirect civil.

5.   The fundamental distinction between direct contempt and indirect contempt lies in the location of the contumacious act. Direct contempt occurs in the actual

physical presence of the court, while indirect contempt occurs entirely or partially outside of the actual physical presence of the court.

6.      "Whether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the contempt and such purpose also determines the type of sanction which is appropriate." Syllabus Point 1, *State ex rel. Robinson v. Michael*, 166 W. Va. 660, 276 S.E.2d 812 (1981).

7.      "Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemnor so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil." Syllabus Point 2, *State ex rel. Robinson v. Michael*, 166 W. Va. 660, 276 S.E.2d 812 (1981).

8.      "Where the purpose to be served by imposing a sanction for contempt is to punish the contemnor for an affront to the dignity or authority of the court, or to preserve or restore order in the court or respect for the court, the contempt is criminal." Syllabus Point 4, *State ex rel. Robinson v. Michael*, 166 W. Va. 660, 276 S.E.2d 812 (1981).

9. Whether a contemnor has been found in civil or criminal contempt is a question of law reviewed *de novo*.

10. "Indirect criminal contemnors are entitled to the same rights as criminal defendants[.]" Syllabus Point 1, in part, *State ex rel. Koppers Co. v. International Union of Oil, Chem. & Atomic Workers*, 171 W. Va. 290, 298 S.E.2d 827 (1982).

11. "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syllabus Point 2, *Simpson v. Stanton*, 119 W. Va. 235, 193 S.E. 64 (1937).

12. To the extent our cases hold or may be read to hold that an indirect criminal contempt may be punished without a jury trial, *see, e.g., In re Frieda Q.*, 230 W. Va. 652, 742 S.E.2d 68 (2013), they are overruled.

**HUTCHISON, Justice:**

The Respondent Judge, the Honorable Kurt Hall, Judge of the Circuit Court of Lewis County, West Virginia, held the Petitioners, Daniel Dilly, Superintendent of the Rubenstein Juvenile Center (RJC), and Nancy Oldaker, Health Services Administrator at RJC, in contempt of court. The Petitioners invoke our original jurisdiction asking us to grant writs of prohibition to prohibit the Respondent Judge from enforcing the contempt orders.[1] After thoroughly considering the Petitioners' respective petitions for prohibition and the Respondents' summary responses, reviewing the pertinent legal authorities, and hearing oral arguments, we find that procedural errors in the contempt proceedings below deprived the Respondent Judge of jurisdiction to impose such sanction and that, therefore, the requested writs of prohibition should be granted.

## I.  FACTS AND PROCEDURAL BACKGROUND

RJC is part of the Division of Corrections and Rehabilitation (DCR). W. Va. Code § 15A-3-12(a) (2018). Petitioner Dilly is Superintendent of RJC. DCR contracts with Wexford Health Services (Wexford) to provide medical care to, among other DCR institutions, RJC. Petitioner Oldaker is Wexford's Health Services Administrator at RJC.

---

[1] The Petitioners filed separate petitions for writs of prohibition. After having heard oral argument in both cases, we have decided to consolidate the two cases for decision.

On July 3, 2022, D.P.,[2] a resident of RJC,[3] quarreled with two other RJC residents and was struck in the jaw. After the altercation, D.P. was examined by the on-duty RJC Wexford nurse. The nurse ordered Tylenol for D.P. About five hours later, D.P. was seen by the new on-duty nurse as he was still complaining of issues related to his jaw. The new on-duty nurse contacted Ms. Oldaker. Ms. Oldaker directed the nurse to contact the itinerant Wexford family nurse-practioner (FNP) who was assigned to cover RJC to determine how the FNP wished to proceed. The FNP directed D.P. be put on a soft food diet and directed the on-duty nurse to schedule an X-ray for D.P.'s jaw. X-rays are accomplished at RJC by a mobile imaging company with whom Wexford subcontracts. The imaging company was scheduled to perform the X-ray on July 5. Throughout July 5, Ms. Oldaker made several unsuccessful telephone calls to the imaging subcontractor to ascertain when the technician would arrive at RJC. At approximately 11:00 p.m. on July 5, the technician telephoned Ms. Oldaker to advise he would not arrive at RJC until July 6.

---

[2]Because of the sensitive nature of his case, we identify D.P. only by his initials. *See* W. Va. R. App. P. 40(e)(1).

[3]A "[r]esident" is a statutory term meaning "a juvenile within the custody of the Division of Corrections and Rehabilitation." W. Va. Code § 15A-1-6 (2018).

2

Meanwhile, on July 6, the Respondent Judge held a previously scheduled hearing to review D.P.'s RJC progress. At that hearing,[4] the Prosecuting Attorney informed the Respondent Judge of the July 3 incident and that D.P. had not yet been X-rayed. The Respondent Judge ordered that D.P. be taken off RJC grounds for an X-ray. The X-ray showed D.P. had a broken jaw. D.P.'s jaw was set to be repaired at the WVU School of Dentistry on July 13, 2022. Prior to this surgery, the Respondent Judge entered an order that D.P.'s mother be notified of the date and time of surgery and "be permitted to be present and visit with [D.P.] prior to and after said surgery." The order continued that D.P.'s mother "will not interfere with the authorities from the [RJC] during [D.P.'s] hospitalization."

After D.P.'s surgery, the Respondent Judge held a hearing on September 22, to review D.P.'s placement. This hearing resulted in a "Medical Care Order" entered on October 20, 2022, that, in pertinent part, (1) directed the RJC internal CID report prepared concerning the July 3 incident be turned over to the probation department, and (2) ordered RJC to schedule an appointment with D.P.'s oral surgeon to have an up to-date X-ray performed as well as allowing D.P.'s mother to attend the appointment. This order directed the circuit clerk to forward a copy of it to, *inter alia*, RJC—but not to Superintendent Dilly or Ms. Oldaker.

---

[4]A transcript of the July 6 hearing was not provided to us by any party to the cases before this Court. We glean what transpired at the July 6 hearing from references to that hearing in the materials included in the appendix records we do have.

3

Another hearing was conducted on December 7 (a transcript of which is not included in the appendices of any of the parties) which resulted in a December 16, 2022, "Review Order."[5] In this Review Order, the Respondent Judge observed, in pertinent part, that the RJC CID report had not yet been provided as previously ordered and ordered that the RJC CID report was to be provided "immediately." The December 16 Review Order also provided "[t]he Court finds that a show cause hearing as to why Kenneth 'Honey' Rubenstein Center has not complied with this Court's previous Orders should be held before this Court on the 19th day of December, 2022, at 1:00 o'clock P.M." and "It is further ORDERED that a show cause hearing shall be held before this Court on the **19th day of December, 2022, at 1:00 o'clock P.M."** (emphasis in original). Superintendent Dilly denies receiving a copy of the Review Order although the Order directed the circuit clerk to "forward" a certified copy of it to RJC (but not to be served on Superintendent Dilly personally). The Respondent Judge did not direct the circuit clerk to forward the Review Order to Ms. Oldaker at all.

On December 13, RJC faxed a copy of the CID report to D.P.'s Juvenile Probation Officer.

---

[5]Superintendent Dilly asserts in his petition (albeit without citation to any appendix record) that while he was present and available to testify at the December 7 hearing, he was not called as a witness, and did not observe the closed hearing as he was a non-party.

4

The Respondent Judge convened a hearing on December 19 which was attended by both Superintendent Dilly and Ms. Oldaker. Neither was represented by counsel nor did the Respondent Judge advise them of a right to counsel. At this hearing, the Respondent Judge held both Superintendent Dilly and Ms. Oldaker in contempt of court without affording them a trial by jury. By order entered January 20, 2023, and styled "**SHOW CAUSE HEARING ORDER**" the Respondent Judge memorialized his bench rulings from the December 19 hearing. In the **SHOW CAUSE HEARING ORDER**, the Respondent Judge found Superintendent Dilly did not provide the CID report that was ordered to be provided in the October 20 Medical Care Order until December 13. The Respondent Judge "d[id] hold [Superintendent Dilly] in civil contempt pursuant to [W. Va. Code] § 61-5-26(d) and fine[d] him Two-Hundred and Fifty ($250.00) Dollars." Likewise, as to Ms. Oldaker, the Respondent Judge found her in contempt for not complying with the October 20 Medical Care Order. The Respondent Judge characterized the Medical Care Order as directing RJC to take D.P. to the dentist to have his dislodged teeth examined and repaired and to notify D.P.'s mother of the appointment so she could attend it. The Respondent Judge "d[id] hold [Ms. Oldaker] in civil contempt pursuant to [W. Va. Code] § 61-5-26(d) and fine[d] her Two-Hundred and Fifty ($250.00) Dollars." The **SHOW CAUSE HEARING ORDER** further provided, "**[t]he Parties in Contempt have 30 days from the entry of this ORDER to pay the contempt fine with the Clerk fo [sic] the Lewis County Circuit Court or face further contempt proceedings**." (emphasis in original).

5

Both Superintendent Dilly and Ms. Oldaker seek writs of prohibition to prevent enforcement of the contempts against them.

## II.    STANDARD FOR ISSUING THE WRIT

We have recognized that a contemnor may either appeal from, or seek prohibition of, a circuit court's contempt citation. *State ex rel. UMWA Int'l Union v. Maynard*, 176 W. Va. 131, 133, 342 S.E.2d 96, 98 (1985). Thus, a prohibition proceeding "lies to determine whether a court has imposed an invalid contempt order." 72A C.J.S. *Prohibition* § 41 at 519 (2015) (footnote omitted). The Petitioners filed petitions for writs of prohibition.

"'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1.' Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syl. Pt. 1, *W. Va. Dep't of Mil. Affs. & Pub. Safety, Div. of Juv. Servs. v. Berger*, 203 W. Va. 468, 508 S.E.2d 628 (1998). While we have cautioned that an original jurisdiction writ of prohibition is an extraordinary remedy that we do not grant lightly,[6] "[w]hen a court is attempting to proceed

---

[6]*E.g., State ex rel. W. Va. Univ. Hosps., Inc. v. Gaujot*, 248 W. Va. 138, 158, 887 S.E.2d 571, 591 (2022); *see also State ex rel Almond v. Rudolph*, 238 W. Va. 289, 294, 794 S.E.2d 10, 15 (2016) ("The extraordinary remedy of a writ of prohibition is to be used sparingly.").

6

in a cause without jurisdiction, prohibition lies, and the petitioner may apply to this court in the first instance, as matter of right, for the writ." Syl. Pt. 2, *Marsh v. O'Brien*, 82 W. Va. 508, 96 S.E. 795 (1918).

Having established that prohibition is an appropriate remedy for the Respondents to pursue, we now turn to the merits of the parties' arguments.

## III.  DISCUSSION

"The contempt power of a court is an inherent one, necessary to the very existence of that court." *P.G. & H. Coal Co. v. Int'l Union*, 182 W. Va. 569, 580, 390 S.E.2d 551, 562 (1988) (Brotherton, J., dissenting). The judicial contempt power is broad. *Largent v. Bouchelle*, 120 W. Va. 364, 371, 198 S.E. 148, 151 (1938) ("Courts of general jurisdiction have broad powers to punish for contempt."). The contempt power "reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (citations omitted)).

7

Because of its broad nature, "[t]he judicial contempt power is a potent weapon[,]" *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967), that "is subject to abuse." *United States v. Neal*, 101 F.3d 993, 996 (4th Cir. 1996) (citing *Int'l Union v. Bagwell*, 512 U.S. 821, 831 (1994)); *see also Pounders v. Watson*, 521 U.S. 982, 988 (1997) (per curiam) ("[T]he contempt power may be abused."). As such, certain limitations have grown up around the use of the contempt power including due process protections for alleged contemnors. *See, e.g.*, 17 C.J.S. *Constitutional Law* § 74 at 113 (2015) ("The courts' exercise of the power of contempt is subject to constitutional constraints or protections afforded persons in judicial proceedings, particularly in criminal contempt proceedings.").

Because "[d]ue process is not a one size fits all proposition[,]" *Miranda v. Garland*, 34 F.4th 338, 359 (4th Cir. 2022), "[i]t is widely recognized that due process requirements vary in their applicability to contempt cases depending upon the nature of the contempt involved." *State ex rel. Robinson v. Michael*, 166 W. Va. 660, 669 n.9, 276 S.E.2d 812, 818 n.9 (1981). There are two categories of contempt, civil or criminal, that each may be committed in one of two ways, directly or indirectly. 17 Am. Jur. 2d *Contempt* § 3 at 469 (2014). Thus, as this Court has repeatedly recognized, "there are actually four classifications of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil." *In re Frieda Q.*, 230 W. Va. 652, 663, 742 S.E.2d 68, 79 (2013); *see also In re Yoho*, 171 W. Va. 625, 627, 301 S.E.2d 581, 583 (1983) ("There are four kinds of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil."); *Robinson*, 166 W. Va.

8

at 669 n.9, 276 S.E.2d at 818 n.9 ("There are . . . four possible classifications of contempt: direct-criminal, indirect-criminal, direct-civil, and indirect-civil."). The amount of process due an alleged contemnor in a contempt proceeding depends "on whether the proceeding is civil or criminal in nature and whether the alleged contempt is direct or indirect." 17 C.J.S. *Contempt* § 74 at 113 (2020) (footnotes omitted). As such, we take a few moments to discuss the distinctions amongst them.

## A. Direct versus Indirect Contempt

"The fundamental distinction between direct contempt and indirect contempt lies in the location of the contumacious act." *In re A.C.B.*, 507 P.3d 1078, 1083 (Colo. Ct. App. 2022); *Cleveland v. Bright*, 162 N.E.3d 153, 164 (Ohio Ct. App. 2020) ("The fundamental distinction between direct contempt and indirect contempt lies in the location of the act of contempt[.]"). "Direct contempt occurs in the actual physical presence of the court, while indirect contempt occurs entirely or partially outside of the actual physical presence of the court." *Frieda Q.*, 230 W. Va. at 663, 742 S.E.2d at 79; *accord Robinson*, 166 W. Va. at 669 n.9, 276 S.E.2d at 818 n.9.

"The distinction between in-court and out-of-court contempts has been drawn . . . for the purpose of prescribing what procedures must attend the exercise of that authority." *Young*, 481 U.S. at 798. Because a direct contempt occurs in the court's presence, the court is personally aware of what has occurred and needs no factfinding to

9

determine what transpired. On the other hand, in an indirect contempt, the allegedly contumacious conduct falls outside the court's first-hand knowledge and, thus, the court requires a factfinding procedure to establish what occurred. *Compare Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996) ("A direct contempt is committed in the presence of the court and is an affront to the dignity of the court. It may be punished summarily by the court, and requires no fact-finding function, as all the elements of the offense are matters within the personal knowledge of the court.") *with In re Marriage of Betts*, 558 N.E.2d 404, 418–19 (Ill. Ct. App. 1990) ("In indirect contempt cases, the judge does not have full personal knowledge of all elements of the contempt. Therefore, proof of facts of which the court cannot take judicial notice must be presented in order to support a finding of contempt.").

## B. Criminal versus Civil Contempt

In demarcating criminal contempt from civil contempt, it has been observed that "[a]lthough the distinctions between civil and criminal contempt often become blurred when applied to particular cases, they are clear enough in the abstract[.]" *Buffington v. Baltimore Cnty., Md.*, 913 F.2d 113, 133 (4th Cir. 1990). We have explained the distinction between civil and criminal contempt thusly:

> [w]hether a contempt is classified as civil or criminal does not depend upon the act constituting such contempt because such act may provide the basis for either a civil or criminal contempt action. Instead, whether a contempt is civil or criminal depends upon the purpose to be served by imposing a sanction for the

10

> contempt and such purpose also determines the type of sanction which is appropriate.

Syl. Pt. 1, *Robinson*, 166 W. Va. 660, 276 S.E.2d 812. We have further explained, "[w]here the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemnor so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil." *Id*. Syl. Pt. 2. Conversely, "[w]here the purpose to be served by imposing a sanction for contempt is to punish the contemnor for an affront to the dignity or authority of the court, or to preserve or restore order in the court or respect for the court, the contempt is criminal." *Id*. Syl. Pt. 4.

The distinction between civil and criminal contempt "is important; civil and criminal contempt are properly invoked for different purposes, under different procedures, and with different sanctions." *United States v. Rizzo*, 539 F.2d 458, 462 (5th Cir. 1976). "It requires no citation of authority to say that a [trial] court may not, even unwittingly, employ a civil contempt proceeding to impose what, in law, amounts to a criminal contempt sanction" because "[w]hen a [trial] court employs civil contempt procedures to punish a contemner, it necessarily deprives the contemner of his constitutional rights and renders his contempt citation a nullity." *Blalock v. United States*, 844 F.2d 1546, 1560 n.20 (11th Cir. 1988) (per curiam) (Tjoflat, J., concurring specially); *see also Bagwell*, 512 U.S. at 826 (citations omitted) ("'Criminal contempt is a crime in the ordinary sense,' and 'criminal penalties may not be imposed on someone who has not been afforded the

11

protections that the Constitution requires of such criminal proceedings.'"); *Bradley v. Am. Household Inc.*, 378 F.3d 373, 379 (4th Cir. 2004) ("The fines here were for criminal contempt, and yet were imposed without the procedural protections necessary for a judgment of criminal contempt. Our system cannot condone such asymmetry.").

### C. The Respondent Judge found the Petitioners in indirect criminal contempt.

In this case, the Respondent Judge did not classify the alleged contempts as either direct or indirect. However, we have independently reviewed the appendix records in this case and agree with the position of the Petitioners and the concession of the State that the contempts at issue before us are indirect.

While the Respondent Judge did characterize the contempts as civil, "[a] [trial] court's description of a contempt sanction as either civil or criminal is not determinative and must be scrutinized independently by the appellate court." *Buffington*, 913 F.2d at 133; *see also Bradley*, 378 F.3d at 377 ("[W]e cannot take the [lower] court's characterization of its own proceedings as either civil or criminal to be determinative; we are required to decide that matter for ourselves."). In other words, "[w]hether a contemnor has been found in civil or criminal contempt is a question of law we review *de novo*." *Mills v. Mills*, 827 S.E.2d 391, 396 (Va. Ct. App. 2019); *In re Contempt of Pavlos-Hackney*, 997 N.W.2d 511, 527 (Mich. Ct. App. 2022) ("This Court also reviews de novo whether a contempt was civil or criminal[.]"); *see also Comm'r of Pub. Health v. Colandrea*, 302

A.3d 370, 382 (Conn. Ct. App. 2023) ("Whether the contempt at issue was civil or criminal presents a question of law over which we exercise plenary review."), *cert. denied*, 306 A.3d 474 (Conn. 2024). We therefore hold that whether a contemnor has been found in civil or criminal contempt is a question of law reviewed *de novo*. Consequently, "[w]e . . . review *de novo* the [Respondent Judge's] characterization of these proceedings as civil, and not criminal, in nature." *In re E.I. DuPont De Nemours & Co.-Benlate Litig.*, 99 F.3d 363, 367 (11th Cir. 1996).

"The Supreme Court has instructed that 'conclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from the subjective intent of [the court imposing the sanction], but from an examination of the character of the relief itself.'" *Id.* at 368 (quoting *Bagwell*, 512 U.S. at 827 (citation and internal quotation marks omitted)). Accordingly, we examine the character of the relief imposed by the Respondent Judge to determine if the relief was civil or criminal.

First, the Respondent Judge specifically invoked the authority of subdivision (d) of West Virginia Code § 61-5-26 (1923),[7] which is West Virginia's criminal contempt statute. *Yoho*, 171 W. Va. at 628-29, 301 S.E.2d at 584 (footnotes omitted) ("In West Virginia, criminal contempts are governed by both W. Va. Rules of Criminal Procedure,

---

[7]West Virginia Code § 61-5-26(d) provides, in pertinent part, "[t]he courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: . . . disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of the said court."

13

Rule 42 and Code, 61-5-26, and civil contempts by W. Va. Code, 57–5–6."); *Kessel v. Leavitt*, 204 W. Va. 95, 155, 511 S.E.2d 720, 780 (1998) (observing that West Virginia Code § 61-5-26 "defines the criminal offense of 'contempt of court'").

Second, the Respondent Judge set the contempt fines in sums certain payable to the circuit clerk untied to any compensatory amount. These factors indicate a criminal contempt sanction. Syl. Pt. 5, *Robinson*, 166 W. Va. 660, 276 S.E.2d 812 ("The appropriate sanction in a criminal contempt case is an order sentencing the contemner to a definite term of imprisonment or an order requiring the contemner to pay a fine in a determined amount."); *Maynard*, 176 W. Va. at 135–36, 342 S.E.2d at 101 (fine payable to the State and not an aggrieved party and set in an arbitrary amount selected by the court not meant to compensate a party was a punishment for criminal contempt).

Third, the Respondent Judge did not provide a means for either Superintendent Dilly or Ms. Oldaker to purge the claimed contempts. Where there is no means provided in the contempt order to purge the contempt, the contempt is perforce criminal. *See, e.g.*, *Bagwell*, 512 U.S. at 829 (citations omitted) ("Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. Thus, a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."); *Buffington*, 913 F.2d at 134 (finding a contempt was criminal where

14

a fine was made payable to the court and was not conditioned on compliance with a court

order).[8]

Having concluded that the Respondent Judge found the Petitioners in indirect

criminal contempt,[9] we turn to whether the Respondent Judge provided the Petitioners

---

[8]This is especially true for Superintendent Dilly as the RJC provided the CID report to the probation department before the December 19 hearing. Thus, it was impossible to purge the contempt of failing to turn the report over by later turning it over. Consequently, the contempt the Respondent Judge entered against Superintendent Dilly was necessarily criminal. "Because the allegedly required acts had already been performed, the magistrate court could not have imposed a civil sanction. Only a criminal contempt sanction could have been imposed." *Charney v. Charney*, 356 P.3d 355, 359 (Idaho 2015); *see also In re O'Malley*, 64 N.E.3d 729, 740-41 (Ill. Ct. App. 2016) (where contemnor complied with court order prior to finding of indirect civil contempt, the contempt was an indirect criminal contempt, since contemnor had no way to purge the contempt).

[9]Although Ms. Oldaker recognizes that the contempt entered against her was criminal, Superintendent Dilly's petition for prohibition appears to concede that the contempt entered against him was civil, a position Superintendent Dilly appeared to subsequently retract in his response to Ms. Oldaker's prohibition petition and in oral argument in this Court. In any event, as we are not bound by the Respondent Judge's characterization of the contempts as civil or criminal, neither are we bound by a party's characterization. *See, e.g., Carbon Fuel Co. v. UMWA,* 517 F.2d 1348, 1350 (4th Cir. 1975) ("We consider of no moment that the proceedings were begun and designated as a civil contempt proceeding. The nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the parties themselves."); *Tue Thi Tran v. Bennett*, 411 P.3d 345, 355 (N.M. 2018) ("[W]e are not bound by the parties' characterization of the contempt as civil or criminal[.]"); *LeMay v. Leander*, 994 P.2d 546, 555 (Haw. 2000) ("Normally, in determining whether a contempt proceeding is, as a matter of law, civil contempt and not criminal contempt, an appellate court does not rely upon the district court's or parties' characterization, but rather must undertake de novo review based upon the character and purpose of the remedy or punishment.").

sufficient procedural protections in imposing the indirect criminal contempts to allow the contempts to stand.

### D. The criminal contempts are void
### and writs of prohibition should be granted.

Indirect criminal contempt calls for the most rigorous procedural protections because "'[c]riminal contempt is a crime in the ordinary sense[.]'" *Hendershot*, 164 W. Va. at 192, 263 S.E.2d at 92 (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968)). As such, "[i]ndirect criminal contemnors are entitled to the same rights as criminal defendants[,]" Syl. Pt. 1, in part, *State ex rel. Koppers Co. v. Int'l Union of Oil, Chem. & Atomic Workers*, 171 W. Va. 290, 298 S.E.2d 827 (1982),[10] including, but not necessarily limited to, the presumption of innocence, proof beyond a reasonable doubt, application of the criminal rules of evidence, potentially the right to counsel, prosecution by the State's prosecuting attorney, and being provided full and plain information about the character and cause of the accusation. *See, e.g., id.* at 292-93, 298 S.E.2d at 829. We believe that the Respondent Judge lacked jurisdiction in this case because the December 16 Review Order failed, at the

---

[10]We have said that "no less than full criminal protections are due process for indirect criminal contempt procedures." *Koppers*, 171 W. Va. at 293 n.2, 298 S.E.2d at 829 n.2. To be clear, this statement means that once an indirect criminal contempt proceeding is instituted, the full panoply of criminal protections attaches. For example, an indirect criminal contempt proceeding need not be commenced by grand jury indictment but may be commenced under Rule 42 of the Rules of Criminal Procedure. *See, e.g., Green v. United States*, 356 U.S. 165, 187 (1958), *overruled on other grounds by Bloom v. Illinois,* 391 U.S. 194 (1968); *United States v. Eyerman*, 657 F. Supp. 1177, 1179 (S.D.N.Y. 1987) (holding that an alleged contemnor "is not entitled to be prosecuted by indictment on a criminal contempt charge.").

16

very least, to provide full and plain information about the character and cause of the contempt accusation—that is, it denied the Petitioners the due process protections of notice and an opportunity to be heard. Syl. Pt. 2, *Simpson v. Stanton*, 119 W. Va. 235, 193 S.E. 64 (1937) ("The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard."); *Tasker v. Mohn*, 165 W. Va. 55, 62, 267 S.E.2d 183, 188 (1980) ("Basic ingredients of due process are notice and an opportunity to be heard.").

"[N]otice and the opportunity to be heard . . . are essential to the jurisdiction of the court in any pending proceeding." *Chesapeake & Ohio Sys. Fed'n, Bhd. of Maint. of Way Emps. v. Hash*, 170 W. Va. 294, 299, 294 S.E.2d 96, 101 (1982), *holding modified on other grounds by Affiliated Constr. Trades Found. v. W. Va. Dep't of Transp.*, 227 W. Va. 653, 713 S.E.2d 809 (2011); *see also State ex rel. Staley v. Hereford*, 131 W. Va. 84, 87–88, 45 S.E.2d 738, 740 (1947) ("It is a fundamental principle of law that notice to a party and an opportunity for him to be heard are essential to the jurisdiction of the court in which a proceeding is pending[.]"). Thus, in any indirect contempt case, whether civil or criminal, the alleged contemnor is entitled to notice and an opportunity to be heard. *See, e.g., P.G. & H. Coal Co.,* 182 W. Va. at 579, 390 S.E.2d at 561 (McHugh, J., concurring) ("Whether the contempt proceeding be civil or criminal, notice and an opportunity to be heard are required for either."); *Hendershot v. Handlan*, 162 W. Va. 175, 193, 248 S.E.2d 273, 282 (1978) (Miller, J., concurring in part and dissenting in part) (asserting that the West

17

Virginia Due Process Clause requires in either a civil or a criminal contempt case "adequate notice of the contempt charge and a reasonable opportunity to be heard[.]").

We have recognized that notice and an opportunity to be heard work in tandem. "The office of notice is to afford an opportunity for hearing, and the two must necessarily go together." *Simpson*, 119 W. Va. at 240, 193 S.E. at 67. Without adequate notice, there is no real opportunity to be heard. "Notice contemplates meaningful notice which affords an opportunity to prepare a defense and to be heard upon the merits." *State ex rel. State ex rel. Hawks v. Lazaro*, 157 W. Va. 417, 440, 202 S.E.2d 109, 124 (1974), *modified on other grounds by State ex rel. White v. Todt*, 197 W. Va. 334, 475 S.E.2d 426 (1996); *see also Wolff v. McDonnell*, 418 U.S. 539, 581 (1974) (Marshall, J., concurring in part) ("[T]he purpose of notice is to give the accused the opportunity to prepare a defense, and the purpose of a hearing is to afford him the chance to present that defense."). Notice is inadequate if it simply informs a party that there is going to be a hearing or even that someone else's rights are going to be adjudicated; rather, "the notice must be sufficient to alert the affected party of the potential impact of the proceeding on the party's rights." *In re Allbev, Inc.*, 160 B.R. 61, 63 (Bankr. W.D.N.C. 1993).

The notice requirements for an indirect criminal contempt proceeding are set forth in West Virginia Rule of Criminal Procedure 42(b). *See Kessel*, 204 W. Va. at 156, 511 S.E.2d at 781 ("Rule 42(b) of the West Virginia Rules of Criminal Procedure . . . clarifies the manner in which a court should apprise an offending party of a charge of

18

contempt[.]"); *see also Young*, 481 U.S. at 794 ("By its terms, Rule 42(b) speaks . . . to the procedure for providing notice of criminal contempt.") (emphasis deleted); *Richmond Black Police Officers Ass'n v. City of Richmond*, 548 F.2d 123, 126 (4th Cir. 1977) ("Rule 42(b) of the Federal Rules of Criminal Procedure prescribes the precise procedure to be followed regarding the 'notice' which must be given to the party or parties charged with criminal contempt that has allegedly occurred outside the presence of the court.").[11]

West Virginia Rule of Criminal Procedure 42(b) provides that an indirect criminal contempt "shall be prosecuted on notice." This notice is required to "state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such." *Id*.

Because the so-called show cause order here (which was styled a "Review Order" and not an Order to Show Cause for Criminal Contempt) was inadequate under Rule 42(b), the Petitioners were denied due process.[12] *See Richmond Black Police Officers*

---

[11]Before December 1, 2002, Federal Rule of Criminal Procedure 42 was virtually identical to West Virginia Rule of Criminal Procedure 42. Congress made several changes in 2002 to Rule 42, but none of them substantively affected the notice portion of the Rule. *See* Fed. R. Crim. P. 42, adv. comm. notes (2002).

[12]We observe here another crucial distinction between civil and criminal contempt. "Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not part of the original cause." *Gompers*

*Ass'n*, 548 F.2d at 127 ("The 'notice' requirements of Rule 42(b) of the Federal Rules of Criminal Procedure were not followed. Due process was violated.").

First, the December 16 Review Order did not provide notice to either Superintendent Dilly or Ms. Oldaker that they personally were being charged with criminal contempt; indeed, it mentioned only the RJC, but neither Superintendent Dilly nor Ms. Oldaker. *Cf. Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 109-110 (2d Cir. 1987) (non-party corporate officers threatened with contempt for corporation's violation of injunction were "entitled to notice that they were defendants in a contempt proceeding," and arguably entitled to an advisement that they were entitled to counsel if contempt was

---

*v. Buck's Stove & Range Co.*, 221 U.S. 418, 444-45 (1911); *see also Brandt v. Gooding*, 636 F.3d 124, 135 (4th Cir. 2011) (cleaned up) ("[A] criminal contempt charge initiate[s] a separate and independent proceeding at law . . . to vindicate the authority of the court [that is] not part of the original [case]."). Because of this, an alleged civil contemnor has already been made a party to the case in which the contempt is brought and the court enjoys personal jurisdiction over the alleged civil contemnor. An alleged criminal contemnor has not been made a party to the criminal action until proper service of the rule to show cause and, thus, the court lacks personal jurisdiction over the alleged criminal contemnor until that time.

We note that Superintendent Dilly denies ever receiving the December 16 Review Order, a claim that the Respondent Judge contests in his summary response. Further, Ms. Oldaker's counsel claimed at oral argument before us that Ms. Oldaker was never served with the December 16 Review Order and only obtained a copy of it after having been found in contempt. Both Superintendent Dilly and Ms. Oldaker explain that they appeared at the December 19 hearing only because of subpoenas issued to them to appear at a hearing on December 19. We do not decide the Petitioners' cases on the factual disputes of either if or when the December 16 Review Order was personally served on them, but upon the inadequacy of the December 16 Review Order to otherwise pass constitutional muster as a show cause in criminal contempt order even if properly served.

20

being contemplated); *Remington Rand Corp.-Delaware v. Bus. Sys., Inc.*, 830 F.2d 1256, 1259 (3d Cir. 1987) (following *Dole Fresh Fruit*).

Second, a show cause order under Rule 42(b) must advise the alleged contemnors that they are being charged with criminal contempt. In this case, the December 16 Review Order did not use the words "criminal contempt," nor did it use the word "contempt" at all.[13] The December 16 Review Order simply cannot be read as charging contempt against anyone. At best the December 16 Review Order alerted RJC that the December 19 hearing would be investigational (*i.e.*, "I am going to figure out why aren't my orders being followed")—not accusatorial (*i.e.*, "I think you should be punished because my orders are not being followed").

---

[13]The United States Supreme Court has held that the duty under Rule 42(b) to employ the term "criminal contempt" can be excused where there is no reasonable doubt that the alleged contemnor was fully aware that a criminal contempt was being charged against the contemnor, and the contemnor was afforded all the other procedural protections to which the contemnor was entitled in the criminal contempt proceeding. *See United States v. UMWA*, 330 U.S. 258, 297–98 (1947); *but see Coolbeth v. Berberian*, 354 A.2d 120, 125–26 (R.I. 1976) (rejecting this aspect of *UMWA* as a matter of state law and requiring that a show cause order expressly notify an accused that he or she is being charged with criminal contempt under R.I. Superior Court Rule of Criminal Procedure 42(b)). While we have recognized that harmless error may apply to criminal contempt proceedings, *Czaja v. Czaja*, 208 W. Va. 62, 73 n.37, 537 S.E.2d 908, 919 n.37 (2000), the omissions in the December 16 Review Order were not harmless as it is not clear the Petitioners knew that that criminal contempt proceedings were being contemplated against them (or at all) nor were the Petitioners afforded the requisite procedural protections otherwise necessary in an indirect criminal contempt proceeding.

21

In short, the December 16 Review Order was inadequate as a show cause order in criminal contempt because it failed to provide the requisite notice that the Petitioners were personally facing a criminal (much less any) contempt proceeding. *See In re Cisneros*, 487 S.W.3d 237, 243 (Tex. Ct. App. 2015) (finding contempt citation void where, *inter alia*, it did "not provide Relator with any notice that he was accused of contempt or subject to being punished for any act or omission [and did not] even include the word 'contempt[.]'").

Finally, the Respondent Judge imposed an indirect criminal contempt fine without affording the Petitioners a jury trial. The Petitioners allege this violated their rights under West Virginia law and voids the contempts. We agree.

In Syllabus Point 8 of *Frieda Q.*, 230 W. Va. 652, 742 S.E.2d 68, we held:

> In any contempt case where the sanction imposed is either (1) a determinate term of incarceration, or (2) a monetary penalty payable to the State or to the court, the contemner is entitled to a jury trial. In any contempt case where the sanction imposed is either (1) an indefinite term of incarceration which specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, (2) the payment of a prospective fine which may be avoided by compliance with the court's order, or (3) the payment of compensation or damages to the party aggrieved, the contemner is not entitled to a jury trial. In any contempt case where the court proceeds without a jury, the contumacious conduct giving rise to the contempt charge must fall squarely within West Virginia Code § 61-5-26(a), (b), (c) or (d).

22

Upon examination of Syllabus Point 8 of *Frieda Q.*, we observe a legal flaw that we now take the opportunity to address.

Syllabus Point 8 of *Frieda Q.* contains three sentences. The first sentence reads, "[i]n any contempt case where the sanction imposed is either (1) a determinate term of incarceration, or (2) a monetary penalty payable to the State or to the court, the contemner is entitled to a jury trial." This sentence articulated the standard for an indirect criminal contempt proceeding. In other words, when a court proceeds against an alleged contemnor for indirect criminal contempt, the alleged contemnor is entitled to a jury trial.[14] We have no problem with this conclusion.

The second sentence in Syllabus Point 8 of *Frieda Q.* reads, "[i]n any contempt case where the sanction imposed is either (1) an indefinite term of incarceration which specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, (2) the payment of a prospective fine which may be avoided by compliance with the court's order, or (3) the payment of compensation or damages to the party aggrieved, the contemner is not entitled to a jury trial." This sentence articulated the standard for a civil contempt proceeding. In other

---

[14]*Frieda Q.*'s holding that a jury trial is required in an indirect criminal contempt where only a fine is imposed necessarily overruled our prior law that "if the sanction for the criminal contempt is a fine then a jury trial is not required." *State ex rel. Walker v. Giardina*, 170 W. Va. 483, 492 n.6, 294 S.E.2d 900, 909 n.6 (1982).

23

words, when a court proceeds against an alleged contemnor for civil contempt, the alleged contemnor is not entitled to a jury trial. *See* 50A C.J.S. *Juries* § 148 at 290 (2019) (footnotes omitted) ("There is generally no right to a jury trial in a civil contempt proceeding, whether the proceeding involves a direct civil contempt or an indirect civil contempt[.]"). Again, we have no problem with this conclusion.

Where we believe *Frieda Q.* does pose a problem is the last sentence in Syllabus Point 8, "[i]n any contempt case where the court proceeds without a jury, the contumacious conduct giving rise to the contempt charge must fall squarely within West Virginia Code § 61-5-26(a), (b), (c) or (d)."[15] The problem with this statement is that it reads West Virginia Code § 61-5-26 as authorizing summary contempt procedures in indirect criminal contempt cases. *Frieda Q.*, 230 W. Va. at 670, 742 S.E.2d at 86. We therefore take this opportunity to address this aspect of Syllabus Point 8 of *Frieda Q.*

---

[15]West Virginia Code § 61-5-26(a) to (d) provides:

> The courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: (a) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice; (b) violence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court; (c) misbehavior of an officer of the court, in his official character; (d) disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of the said court.

24

When West Virginia Code § 61-5-26 speaks of summary punishment, it speaks in terms of proceedings without, among other things, a jury trial. *See Green*, 356 U.S. at 193-94 n.1 (Black, J., dissenting) (citation omitted) ("The term 'summary proceeding' (or 'summary trial') is used in its ordinary sense to refer to a 'form of trial in which the ancient established course of legal proceedings is disregarded, especially in the matter of trial by jury[.]'"). Any reading of West Virginia Code § 61-5-26 that authorizes summary proceedings in indirect criminal contempt cases, though, is impermissible. "[T]he conduct giving rise to an indirect contempt does not 'threaten[] a court's immediate ability to conduct its proceedings.' For that reason, indirect criminal contempt may not be punished summarily and 'more normal adversary procedures' are required." *Parkhurst v. U.S. Dep't of Educ.*, 9 F. App'x 900, 904–05 (10th Cir. 2001) (citations omitted); *Neal*, 101 F.3d at 997 (similar); *see also Bagwell*, 512 U.S. at 833 (citations omitted) (holding in criminal contempt case that "[s]ummary adjudication of indirect contempts is prohibited, and criminal contempt sanctions are entitled to full criminal process[.]"), *accord* Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Criminal* § 14:8 (2023-2024 ed.) ("Summary adjudication, which is allowed in the case of a direct contempt, is not allowed to punish an indirect contempt."); William J. Rich, *Modern Constitutional Law* § 25:3 (3rd ed. Westlaw Nov. 2023 update) ("Criminal contempt sanctions for indirect contempt may only be imposed following full criminal process."); *cf.* W. Va. R. Crim. P. 42(a) ("A criminal contempt may be punished summarily if the judge certifies that the judge saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court."). As has been recognized, "[a]lleged [criminal] contempts

25

committed beyond the court's presence where the judge has no personal knowledge of the material facts are especially suited for trial by jury." *Green*, 356 U.S. at 217 n.33 (Black, J., dissenting). Consequently, to the extent our cases hold or may be read to hold that an indirect criminal contempt may be punished without a jury trial, *see, e.g., In re Frieda Q.*, 230 W. Va. 652, 742 S.E.2d 68 (2013), they are overruled.[16]

Thus, we now read the last sentence of Syllabus Point 8 of *Frieda Q.* as articulating the standard for a direct criminal contempt. In other words, conduct falling squarely within West Virginia Code § 61-5-26(a) through (d) (and occurring in the actual physical presence of the court) constitutes direct criminal contempt and direct criminal contempt does not entitle the alleged contemnor to a jury trial—unless (1) the claimed contumacious conduct falls within West Virginia Code § 61-5-26(a), in which case the alleged contemnor is entitled to a jury trial if the judge imposes a contempt punishment

---

[16]*Frieda Q.,* observed that we had previously found West Virginia Code § 61-5-26 was unconstitutional "insofar as it permitted 'imprisonment without a jury trial in a criminal contempt proceeding where the contemnor is sentenced and the sentencing order does not provide him an opportunity to purge the contempt.'" 230 W. Va. at 669, 742 S.E.2d at 85 (quoting *Hendershot v. Hendershot*, 164 W. Va. 190, 202, 263 S.E.2d 90, 97 (1980)). Critically, we have recognized that "*Hendershot* states the due process requirements for that type of contempt which is classified as indirect criminal contempt." *Robinson*, 166 W. Va. at 669 n.9, 276 S.E.2d at 818 n.9; *Maynard*, 176 W. Va. at 134, 342 S.E.2d at 100 ("*Hendershot* involved an indirect criminal contempt[.]"). Consequently, *Frieda Q.* and *Hendershot* stand for the principle that West Virginia Code § 61-5-26 is unconstitutional only when it is read to dispense with the right to jury trials in indirect criminal contempts. West Virginia Code § 61-5-26 retains its full vitality as a means of summarily punishing direct criminal contemnors provided the contempt penalty imposed is not serious. *See Bagwell*, 512 U.S. at 833 ("Direct contempts also cannot be punished with serious criminal penalties absent the full protections of a criminal jury trial.").

exceeding a fifty-dollar fine or ten days of incarceration, *see id*. § 61-5-26 ("No court shall,

without a jury, for any such contempt as is mentioned in subdivision (a) of this section,

impose a fine exceeding $50.00, or imprison more than ten days."), or (2) the court imposes

under any of West Virginia Code § 61-5-26's subdivisions a serious criminal contempt

penalty as defined by the Sixth Amendment to the United States Constitution. *See* Philip

A. Hostak, Note, *International Union, United Mine Workers v. Bagwell: A Paradigm Shift*

*in the Distinction Between Civil and Criminal Contempt*, 81 Cornell L. Rev. 181, 186

(1995) ("The Supreme Court has further limited the use of summary contempt powers by

requiring that 'serious' criminal contempts be tried by jury; accordingly, use of the

summary contempt power is confined to cases of direct 'petty' contempt.").[17]


       In the cases at bar, we have concluded that the Respondent Judge imposed

punishment upon the Petitioners for indirect criminal contempt. As such, the Petitioners

---

[17]A serious contempt under the Sixth Amendment is generally one where the penalty exceeds six months of incarceration while a petty contempt is one where the penalty is of less than that duration. *See, e.g., Codispoti v. Pennsylvania*, 418 U.S. 506, 512 (1974) ("[O]ur decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes."). In *Bagwell*, the Supreme Court concluded that the imposition of a serious fine in a direct criminal contempt case also triggers a jury trial right but left unresolved where the line between serious and petty fines should be drawn. *Bagwell*, 512 U.S. at 837-38 n.5; *see also Dep't of Hous. Pres. & Dev. of City of New York v. Deka Realty Corp.*, 620 N.Y.S.2d 837, 844 (App. Div. 1995) ("*In Mine Workers of Am. v. Bagwell, supra*, 512 U.S. 821, ——, n.5, 114 S. Ct. 2552, 129 L.Ed.2d 642, 658, n.5, the Supreme Court explicitly left open the question of 'what magnitude of contempt fine may constitute a serious criminal sanction'."). "Although there is no specific threshold, the decisions of the Supreme Court and the courts of appeals suggest that a criminal contempt fine is 'serious' if it constitutes a substantial deprivation." *Right to A Jury Trial*, 39 Geo. L.J. Ann. Rev. Crim. Proc. 550, 575 n.1662 (2010) (collecting cases).

were entitled to jury trials. The appendix records in the cases before us do not show that Superintendent Dilly or Ms. Oldaker were either advised of their right to a jury trial or that either of them waived such right. The absence of a jury trial or a proper waiver thereof renders the indirect criminal contempts entered against them void.

Because the Respondent Judge failed to provide notice to the Petitioners that they were facing indirect criminal contempt proceedings on December 19, 2022, and then further failed to afford them jury trials before imposing a determinate fine payable to the court, the contempts entered against both Petitioners were void. *See, e.g., In re Roisman,* 651 S.W.3d 419, 435 (Tex. Ct. App. 2022) ("A contempt order rendered without adequate notice is void."); *Ex parte Casillas*, 25 S.W.3d 296, 299 (Tex. Ct. App. 2000) ("Because Casillas was not given a jury trial, the contempt order violates her constitutional right to trial by jury and is therefore void."). Consequently, we grant the Petitioners their requested writs of prohibition. *See Goff v. Goff,* 54 W. Va. 364, 369, 46 S.E. 177, 179 (1903) ("Prohibition lies where there is an effort to enforce, or where there may be an attempt to enforce, a void order or decree.").[18]

---

[18]Superintendent Dilly additionally asks us to prohibit the Respondent Judge from enforcing his prior orders as an infringement of DCR's authority to operate its facilities. Given our disposition of this original jurisdiction case, we do not address his request and express no opinion on its merits.

28

## III.    CONCLUSION

For the foregoing reasons, we grant the requested writs of prohibition.

Writs granted.